[No. 3126.   Decided May 7, 1900.]

JOHN E. REED, *Respondent,* v. CHARLES LONEY *et al.,*
*Appellants.*

FRAUDULENT CONVEYANCES—ACTION TO SET ASIDE—SUFFICIENCY OF
COMPLAINT—ALLEGATION OF INSOLVENCY.

In an action seeking to subject land fraudulently conveyed to
the lien of a judgment, the complaint sufficiently states that the
defendants had no other property out of which the execution
could be satisfied, when it alleges that the execution was returned
wholly unsatisfied, and that the property pretended to be con-
veyed was all the property owned by the judgment debtors, out
of which the judgment could be satisfied, in whole or in part.

WITNESSES—INTRODUCTION    OF   TESTIMONY   OF   ADVERSE   PARTY—
EFFECT.

Where plaintiff introduces in evidence testimony given by the
defendant upon another trial, solely for the purpose of impeach-
ing and rebutting the allegations contained in an affirmative
defense set up by defendant in the later action, such testimony
does not thereby become evidence in chief for the plaintiff nor
make it incumbent on him to contradict the assertions therein
contained.

PROMISSORY NOTE—COMMUNITY DEBT—PRESUMPTIONS.

Where a promissory note is executed by the husband as prin-
cipal, it raises a presumption in favor of the community char-
acter of the debt.

FRAUDULENT CONVEYANCES—KNOWLEDGE OF GRANTEE.

Although there may be no direct proof of knowledge of fraud
on the part of the grantees to a fraudulent conveyance, they must
be held chargeable with such notice as to have put them on in-
quiry, when it appears that the conveyance was made to the
grantees by their father, attempting to pass to them all his prop-
erty, in the face of an impending judgment for a considerable
sum on account of lands purchased for another son;  that the
grantor and grantees lived together and worked together in the
management and farming of the lands so conveyed, both before
and after the alleged conveyance;  and that the grantees parted
with nothing of value on taking the conveyance.

28—22 WASH.

Appeal from Superior Court, Walla Walla County.—
Hon. THOMAS H. BRENTS, Judge. Affirmed.

*Thomas & Dovell* and *B. L. & J. L. Sharpstein,* for appellant.

*Lester S. Wilson,* for respondents.

The opinion of the court was delivered by

ANDERS, J.—Action by John E. Reed against Charles
Loney, Charlotte Loney, his wife, C. C. Loney and W. D.
Loney, to set aside conveyances of certain described lands
in Walla Walla county, made by Charles Loney and wife
to the other defendants, who are their sons, for the purpose, as alleged, of hindering, delaying and defrauding the
creditors of the community composed of Charles and Charlotte Loney, and to subject said lands to the lien of a judgment obtained by said plaintiff against said Charles Loney.
The facts in the case are as follows: On the 5th day of
May, 1897, the plaintiff obtained a judgment against John
T. Loney and Charles Loney for the sum of $4,055, together with interest, attorney's fees, and costs, aggregating
in all a sum in excess of $5,000. The judgment was recovered upon joint and several notes executed by John T.
and Charles Loney for the purchase price of a tract of
land conveyed by plaintiff to said John T. Loney, and in
the action in which judgment was rendered it was expressly determined that the said Charles Loney joined in
the execution of said notes as principal. John T. Loney
was a son of Charles and Charlotte Loney, and had worked
on his father's farm for about five years after becoming
of age, without receiving compensation therefor. His
father, however, had, according to his son's testimony,
promised to help him get a start in life, and, with that
object in view, had joined in the execution of the notes
given for the land conveyed to him. On the 16th day of

February, 1897, and while the suit in which said judgment was rendered was pending and undetermined, the defendants Charles Loney and wife, for an alleged consideration of one dollar and the assumption by the grantee of certain mortgages, executed and delivered to the defendant W. D. Loney a deed of conveyance to a portion of the premises in controversy, and, by another deed, conveyed to defendant C. C. Loney, for a like consideration, another portion of said premises. The grantees at the same time also received, under an alleged contract of sale, all the farm implements, horses, cattle, and wagons, and all other personal property on the premises, necessary to the farming and management of the same. On the first day of May, 1897, and four days before the judgment aforesaid against Charles and John T. Loney was filed in the cause, but after the filing of the findings and conclusions of law by the referee upon which said judgment was rendered, the defendants Charles Loney and wife executed to defendant C. C. Loney a deed of conveyance covering the remainder of the lands in question. All the property, real and personal, of the community, with the possible exception of some exempt personalty, was thus transferred to their two sons, W. D. and C. C. Loney, but all the defendants subsequently to said transfers continued to reside together upon the premises and cultivate the lands as they had formerly done. An execution was issued on the judgment against said Charles Loney, and was returned by the sheriff as wholly unsatisfied; and supplemental proceedings were thereafter instituted by plaintiff, but no property subject to execution was discovered. Whereupon plaintiff instituted this proceeding to set aside the deeds and subject the lands to his judgment. Defendants set up as an affirmative defense that the conveyances and transfers of the lands, and of the chattels necessary in their

management, were in execution of a trust, under an agreement which was entered into at the time the lands were acquired by Charles Loney, that is, on December 8, 1892; that the legal title to the lands was taken in the name of the father, but that he held merely in trust for his two sons, W. D. and C. C. Loney, under an agreement that they should all work together to pay off a mortgage indebtedness of some $17,000 on the premises, which had been assumed as consideration for the conveyance from Charles Loney's grantors, and that, when such indebtedness was paid off, the lands and personalty should be conveyed, on demand, by the said Charles Loney to the said two sons, who were to provide a home thereon for their parents during the remainder of their lives. No proof, however, was introduced by defendants to establish this defense; the defendants apparently regarding the matter as having been proved by plaintiff by reason of his introduction in evidence of Charles Loney's testimony taken in the supplemental proceedings, where he stated his reasons for making the conveyances to his two sons, and what the respective interests of himself and sons were in the premises which he conveyed. It appeared in evidence that the sons who received this land worked for their parents and assisted in cultivating it, for a number of years after becoming of age, without receiving compensation therefor. The mortgage indebtedness on the lands had been reduced by Charles Loney, but at the date of the first alleged fraudulent transfer (February 16, 1897) the lands were still incumbered to the extent of $16,708. A large portion of this indebtedness, however, was secured by a mortgage upon other land than that in controversy. The only evidence regarding the value of the land in controversy placed its value at $17,280. The case was heard before a referee, upon whose findings of fact and conclusions of law the

court rendered judgment in favor of the plaintiff, from which judgment the defendants appeal.

The appellants attack the complaint in this cause on the ground that it does not allege with particularity the fact that appellants, Charles and Charlotte Loney, had no other property sufficient to satisfy respondent's judgment at the time of making the conveyances and transfers complained of, or at the time of the commencement of this action. While such allegation is not made in the complaint by particular averment, yet sufficient facts are set forth to show the utter insolvency of the judgment debtors both at the time of the transfers and at the date of the commencement of this action. It is shown by the complaint that execution was issued on the judgment within two months after its rendition, and that it was returned wholly unsatisfied; and the complaint further alleges "that the above described property so pretended to be sold, conveyed, and transferred to the defendants W. D. Loney and C. C. Loney, as aforesaid, constitutes all and singular the property belonging to the said community of the defendants Charles Loney and Charlotte Loney, or either of them, out of which the said judgment could be satisfied, in whole or in part, and unless this said property can be reached and applied to the payment of said judgment the same must remain wholly unpaid." Under the prior decisions of this court the complaint is good as against a demurrer based on the ground that it fails to state facts sufficient to constitute a cause of action.

" If the property conveyed was all the property owned, it necessarily follows that there was no other property out of which the execution could be satisfied." *O'Leary v. Duvall*, 10 Wash. 666 (39 Pac. 163).

See, also, *Cook v. Tibbals*, 12 Wash. 207 (40 Pac. 935).

Upon the trial the respondent, for the purpose of impeaching and rebutting the allegations of appellants'

answer setting forth the oral contract of trust between father and sons, introduced in evidence, distinctly stating at the time the purpose of its introduction, the testimony of appellant Charles Loney, which had been given by him in the proceedings supplemental to the execution. This was the only evidence introduced by either side bearing on the alleged trust agreement, and it is the contention of appellants that respondent thus made Charles Loney his own witness, and is bound by any of his testimony that can be construed against him; while the respondent contends that the testimony, having been introduced for purposes of impeachment only, and being in no way essential to the making out of his own case, is not binding on him. As already intimated, the object was simply to show that the defendant Charles Loney had previously testified contrary to the allegation set forth in his verified answer. We are constrained to hold that this testimony, having been introduced for the sole purpose of meeting and rebutting the allegations of the answer, did not thereby become evidence in chief for the plaintiff, nor was it incumbent on him to contradict the assertions therein. *Salt Springs National Bank v. Fancher,* 36 N. Y. Supp. 742.

But, even if it were conceded that the testimony so introduced was binding on the respondent in every respect, still, in our judgment, it does not, taken as a whole, prove the trust agreement set forth in the defendants' answer. The appellants, therefore, must be held to have failed in establishing their affirmative defense.

We think that the community character of the debt upon which the judgment against Charles and John T. Loney was founded was satisfactorily established. It had already been determined that Charles Loney was a principal, and not a surety, on the notes sued on. The presumption, where a promissory note is executed by the husband, is that

it evidences a community debt, and there is nothing in this case to overthrow such presumption. On the contrary, there is proof showing that the father had, in carrying out a previous promise to assist his son John T. Loney in getting a start, assisted him in buying the land, joined him in giving notes for the purchase price, agreed to help him pay them off, and, in fact, paid $1,015 thereon. The strong moral obligation resting upon parents to provide for a son has, in this case, become a legal one, resting upon a promise made, which was afterwards fully executed by the act of the father in obligating himself to pay for the land provided by him for his son. It was an act certainly of more beneficial interest to the community than to the husband alone.

In answer to the appellants' contention that the respondent could not have been injured by the conveyances, for the reason that the lands were incumbered to such an extent that, with a homestead exemption of $1,000, to which the grantors were entitled, there would be nothing left for creditors, it is sufficient to say that there is no issue in this case as to whether the grantors are entitled to a homestead in the premises. However, whatever rights the grantors may have by way of exemption in the premises are amply protected by the decree, which provides that said judgment constitutes a lien upon all of said real and personal property, and that the same, or so much thereof as may be necessary, be sold as upon execution against said defendants Charles Loney and Charlotte Loney, saving to said defendants Charles and Charlotte Loney any right of exemption that they may have, etc.

As to the participation of the grantees in the alleged fraud, although there is no direct proof of knowledge and intent on their part, sufficient appears to render them chargeable with such notice as to put them on inquiry, and

that is all the law requires. See *State v. Mason*, 34 Am. St. Rep. 399, note; *O'Leary v. Duvall, supra.*

It is conceded that they are the children of the grantors, and lived with them and worked with them on the lands in controversy for some years, endeavoring to pay off a heavy mortgage indebtedness thereon; and they must, from their family and business associations, have been fully acquainted with the financial condition of their parents. It is hardly possible to believe that they were ignorant of the fact that the father was being sued for a claim amounting to some $5,000 on account of a farm previously purchased for a brother of the grantees; and, besides, they took these conveyances without parting with anything of value at the time, knowing that their father was divesting himself of all of his property, real and personal, in the face of an impending judgment.

It appears from all of the evidence in the record that the judgment of the superior court is right, and it is therefore affirmed.

GORDON, C. J., and DUNBAR, REAVIS and FULLERTON, JJ., concur.