[No. 4494. Decided November 10, 1903.]

DANIEL O'CONNOR, *Respondent,* v. HUGH JACKSON *et al.,*
*Appellant.*[1]

COMMUNITY PROPERTY—ORAL SALE BY HUSBAND—POSSESSION OF PURCHASER—PAYMENT—NOTICE TO WIFE PRESUMED—SPECIFIC PERFORMANCE. Where a husband and wife are in the actual possession of community realty, and place a purchaser in possession under an oral agreement of sale made by the husband alone, the consideration paid by the purchaser is presumed to move to the community and the assent of the wife is presumed until the contrary is made distinctly to appear; and specific performance may be decreed without showing the wife's knowledge of the oral agreement, where there is nothing to overcome such presumption.

LANDLORD AND TENANT—DISPUTING TITLE OF LANDLORD. A tenant in possession can acquire no interest by quitclaim deed as against his landlord.

Appeal from a judgment of the superior court for Klickitat county, A. L. Miller, J., entered April 21, 1902, upon

[1]Reported in 74 Pac. 372.

findings in favor of plaintiff, after a trial upon the merits
before the court without a jury.    Affirmed.

*W. B. Presby,* for appellants.    The contract to sell com-
munity realty made by the husband alone was void.    *Hol-
yoke v. Jackson,* 3 Wash. T. 235, 3 Pac. 841; *Hoover v.
Chambers,* 3 Wash T. 26, 13 Pac. 547; *Colcord v. Leddy,*
4 Wash. 791, 31 Pac. 320; *Graves v. Smith,* 7 Wash.
14, 34 Pac. 213.    Specific performance should not be
granted upon parol evidence and part performance except
upon clear, satisfactory, and undisputed proof.    *Hazleton
v. Putnam,* 3 Pin. (Wis.) 107, 54 Am. Dec. 158; *Eckel
v. Bostwick,* 88 Wis. 493, 60 N. W. 784; *Wagonblast v.
Whitney,* 12 Ore. 83, 6 Pac. 399; *Magee v. McManus,*
70 Cal. 553, 12 Pac. 451.

*Coovert & Stapleton* and *Brooks & Snover,* for respond-
ents.    The wife is estopped by accepting the fruits of the
sale.    *Konnerup v. Frandsen,* 8 Wash. 551, 36 Pac. 493;
*Brundage v. Home Savings & L. Ass'n,* 11 Wash. 277, 39
Pac. 666; *Payne v. Still,* 10 Wash. 433, 38 Pac. 994.    The
oral contract of sale could not be revoked without an offer
to repay the consideration received.    *Frink v. Thomas,*
20 Ore. 265, 25 Pac. 717; *Cade v. Davis,* 96 N. C. 139, 2
S. E. 225; *Jennisons v. Leonard,* 21 Wall. 302; *Murphy
v. Lockwood,* 21 Ill. 611; *Johnson v. Jackson,* 27 Miss.
498, 61 Am. Dec. 522; *Buchenau v. Horney,* 12 Ill. 336.
Specific performance may be decreed on conflicting testi-
mony.    *Mudgett v. Clay,* 5 Wash. 103, 31 Pac. 424; *Mun-
day v. Jolleffe,* 5 Myl. & Cr. 167, 177.

PER CURIAM.—This was an action by Daniel O'Con-
nor, respondent, against Hugh Jackson, Lottie Jackson,
and Harry J. Dunn, appellants, for a specific performance
of an oral contract for the sale of real estate.    The case

was before this court on a prior appeal, when we held that
the demurrer interposed by the appellants to the respond-
ent's complaint should have been sustained.   23 Wash.
224, 62 Pac. 761.   After the case was remanded, the orig-
inal complaint was amended, the cause put at issue, and
a trial had to the court upon the merits of the controversy.
The following findings of fact were made by the trial
court:

"That during all of the times mentioned in the com-
plaint on file herein, the defendants Hugh Jackson and
Lottie Jackson were, and now are, husband and wife.

"That during all the times mentioned in the complaint
on file herein, the defendant Harry J. Dunn was, and now
is, a single man, and that the said T. L. Masters and Mary
Masters were, and now are, husband and wife.

"That on the 12th day of July, 1893, the defendants
Hugh Jackson and Lottie Jackson were the owners in fee
of an undivided one-half interest in and to the tract or
lot of real estate situated in the City of Goldendale, Wash-
ington, described as follows, to wit:   Beginning at a
point nineteen feet west from the northeast corner of lot
16 in block 15 of J. J. Golden's First addition to the City
of Goldendale, Washington, and running thence west nine-
teen feet, thence south one hundred feet, thence east nine-
teen feet, and thence north one hundred feet to the place
of beginning.   That the said defendants were on said date
in the actual possession of the said tract of real estate.

"That on said 12th day of July 1893, the said defend-
ants Hugh Jackson and Lottie Jackson entered into an
agreement with one T. L. Masters, by the terms of which
the said Hugh Jackson and Lottie Jackson, defendants,
sold and agreed to convey to the said T. L. Masters, by
good and sufficient warranty deed, an undivided one-half
interest in the tract of real estate described in section 3 of
these findings; and the said T. L. Masters agreed with the
said defendants to pay therefor the sum of $500; that
the said agreement was not reduced to writing, but the de-
fendants Hugh Jackson and Lottie Jackson, in pursuance

of said agreement and in compliance therewith, placed the said T. L. Masters in possession of said property, and the said T. L. Masters paid the consideration of $500 therefor, by then and there paying to the said defendants the sum of $150 in cash, and assuming an obligation of said defendants, to wit, a promissory note in the sum of $350, then held by one W. H. Chappell, which said obligation the said T. L. Masters thereafter paid.    The said T. L. Masters, having fully paid said consideration, and performed each and every condition of said contract which was to be kept and performed by him, demanded a deed from the said defendants Hugh Jackson and Lottie Jackson, but that said defendants failed and refused, and still fail and refuse, to execute the said deed.    That the said T. L. Masters continued in possession of said undivided one-half interest in said tract of real estate until the 4th day of October, 1894, when he sold the same in consideration of the sum of $500 to this plaintiff, and then and there executed a good and sufficient deed of the same to this plaintiff, which said deed was and is of record with the auditor of said county and state in Book 12, on page 234. That upon said deed being made and delivered to this plaintiff, he, the said plaintiff, was placed in possession of the said tract of real estate, and has ever since said date so remained in possession of the same, and is in possession thereof.

"That on the 23d day of May, 1899, the said defendants Hugh Jackson and Lottie Jackson executed a quitclaim deed of said premises to the defendant Harry J. Dunn, which said deed was, on the ——— day of May, 1899, filed for record and recorded in the office of the auditor of Klickitat county, Washington, on page 582 of Book K of the deed records of said county.    That at the date of the execution of said deed the defendant Harry J. Dunn was occupying said premises as the tenant of this plaintiff, under a written lease from plaintiff and the owner of the other undivided one-half interest thereof.    That said defendant Dunn well knew at the date of the execution and acceptance of said deed that this plaintiff was the

owner of said real estate, to the extent of an undivided one-half interest therein.

"That the said deed executed by the said defendants Hugh Jackson and Lottie Jackson to the defendant Harry J. Dunn is a cloud upon the title of this plaintiff."

The court, on these findings, made appropriate conclusions of law, and entered judgment in conformity therewith. The appellants proposed certain findings and conclusions, which the court refused to make; and they bring the case here upon their exceptions to findings and conclusions made, and the refusal of the court to make the proposed findings and conclusions.

After a careful examination of the record, in connection with the arguments of the respective counsel, we are of the opinion that the essence of this controversy, from the standpoint of appellants, is presented by the first point made in their brief:

"It is conceded that this was community property of Hugh Jackson and Lottie Jackson. It is stipulated that Hugh Jackson made some oral agreement with T. L. Masters for the conveyance of this property to Masters. It does not appear that Lottie Jackson joined in any such oral agreement, or had any knowledge of such oral contract, or assented to any such contract. On the contrary, the testimony throughout tends to show that she never had knowledge of, joined in, or assented to such contract."

There is ample testimony in the record showing, that Masters, the vendee, entered into possession of the real estate in question by virtue of the oral contract made with appellant Hugh Jackson; that the consideration for such purchase was $500, and was paid by Masters in the manner stated by the trial court in its findings; that he continued in possession thereof till October 4, 1894, when he (Master's) and wife conveyed their interest in the property to respondent Daniel O'Connor; that respondent was

placed in possession of the real estate by his grantors; that such possession was continuous till the commencement of the present action; that appellants Hugh and Lottie Jackson conveyed the said real estate to appellant Harry J. Dunn by a warranty deed on the 23d day of May, 1899; that Dunn was at that time the tenant of respondent, and of the owner of the other half interest in such property; and that Dunn then had full knowledge of respondent's rights therein.

It also appeared from the evidence, that about the middle of September, 1893, Masters endeavored to procure the deed of this real estate from the Jacksons, who were willing to execute the instrument, but, under advice of an attorney, it was then deemed advisable to procure the signatures of two other parties to the conveyance in connection with the Jacksons as grantors; that such parties refused to join in the execution of the deed till some unsettled accounts were adjusted between them and appellant Hugh Jackson; and that Masters, while he was in possession of the property, after payment of the purchase money, demanded the deed from appellant Hugh Jackson, but was unable to procure it.

We think that under the testimony the consideration of $500 for the purchase of the real estate moved to the community (Hugh and Lottie Jackson); and such is the presumption, nothing appearing to the contrary in the record, under our statutory provisions concerning community property and community interests. We have held that the presumption, when a promissory note is executed by the husband, is that it evidences a community debt. *Reed v. Loney,* 22 Wash. 433, 61 Pac. 41. If this be correct, the converse of the proposition must be equally true—that where a party assumes and discharges a community obliga-

tion, or pays money for its benefit at the instance of either spouse, the assent of both members of the community is presumed until the contrary is made distinctly to appear. There is nothing in this record to overcome this presumption as between the Jacksons, appellants, and T. L. Masters. The finding of the trial court that the conveyance from Jackson and wife to appellant Harry J. Dunn was a quitclaim instead of a warranty deed does not affect the merits of the controversy in the least. Dunn took nothing by his deed as against respondent.

No error appearing in the record warranting a reversal of the judgment of the superior court, it must therefore be affirmed, and it is so ordered.