[No. 19248.   Department Two.   September 11, 1925.]

WILLIAM L. STEVENS, as Administrator of the Estate of Winfield Scott Stevens, Deceased, Respondent, v. NACHES STATE BANK, Appellant.[1]

HUSBAND AND WIFE (61, 78)—COMMUNITY PROPERTY—DEBTS CONTRACTED BY HUSBAND—PLEDGE AS SECURITY FOR NOTE—AGENCY—PRESUMPTIONS. The husband may use the community personal property for the purpose of assisting a child of the spouses; and in going upon and securing a son's note to that end it will be presumed that he acts as statutory agent of the community, in the absence of any objection or evidence of non-consent.

Appeal from a judgment of the superior court for Yakima county, Davidson J., entered October 14, 1924, upon findings in favor of the plaintiff, in an action to recover property of an estate, after a trial on an agreed statement of facts. Reversed.

*Holden, Shumate & Cheney,* for appellant.
*Parker & Parker,* for respondent.

[1]Reported in 238 Pac. 918.

TOLMAN, C. J.—Respondent, as plaintiff, brought this action to recover from the defendant a certain certificate of deposit for $1,000, alleged to be the community property of his decedent and Nancy J. Stevens, who had been husband and wife for some thirty years preceding the death of the decedent.

The case was tried to the court upon an agreed statement of facts, which is as follows:

"1

"That at all times in the complaint mentioned, the defendant Naches State Bank, was and now is a banking corporation organized and existing under the laws of the state of Washington, with its principal place of business at Naches, Yakima county, Washington.

"2

"That on the 10th day of November, 1923, Winfield Scott Stevens died intestate in Yakima county, state of Washington.

"3

"That on the 26th day of November, 1923, the plaintiff by an order of the superior court of Yakima county, state of Washington, was appointed administrator of the estate of said decedent, thereafter qualified and entered upon the discharge of his duties and is now the duly qualified and acting administrator of said estate.

"4

"That at the time of his death, and all times herein mentioned, the decedent and Nancy J. Stevens were husband and wife, and John Stevens herein mentioned was their son, and all the property which the decedent had any interest in at the time of his death had been accumulated and acquired by the joint efforts of the said Winfield Scott Stevens and Nancy J. Stevens, in the state of Washington, and was community property of said decedent and Nancy J. Stevens.

"5

"That subject to the rights of Naches State Bank, as herein set forth, at the time of the death of said

decedent, the community of decedent and said Nancy J. Stevens were the owners of a certain certificate of deposit issued by the Naches State Bank, defendant herein, for the sum of $1,000.00, which certificate bears date the 16th day of November, 1922, payable to the decedent as W. S. Stevens, which certificate is payable in six or twelve months after its date at the option of the owner.

"6

"That said certificate of deposit is of the value of $1,000.00 with interest at the rate of 4 per cent per annum from November 16th, 1922, until paid.

"7

"That on the 31st day of March, 1922, John Stevens and Winfield Scott Stevens, said decedent, made, executed and delivered to Naches State Bank a promissory note in words and figures as follows:

" 'Nine months after date, for value received, I promise to pay to the order of Naches State Bank, at the Naches State Bank, Naches, Wash., Three Thousand and No/100 Dollars in gold coin, with interest after date at the rate of 8 per cent per annum until paid. For value received each and every party signing or endorsing this note hereby waives presentment, demand, protest and notice of non-payment thereof, binds himself thereon as a principal, not as a surety, and promises in case suit is instituted to collect the same, or any portion thereof to pay such additional sum as the court may adjudge reasonable as attorney's fees in such suit. Interest payable quarterly.

John Stevens
W. S. Stevens.'

"That said decedent Winfield Scott Stevens executed said note as an accommodation maker, and no compensation was received by either said Winfield Scott Stevens or said community for signing said note, and that said note remains unpaid to the date hereof in a sum in excess of the value of said certificate of deposit, with interest thereon.

"8

"That on the 16th day of November, 1922, the said certificate of deposit was issued by the said Naches Bank to the decedent; that within sixty days thereafter, the exact date being unknown, the Naches State Bank requested payment of said note from said decedent, and that pursuant to said request, said decedent brought said certificate of deposit to said bank and offered to surrender the same as a payment upon said note, which offer was not accepted, and an arrangement was thereupon made to leave said certificate with said bank as collateral security for the payment of said note pending the efforts of said bank to secure the payment of said note from said John Stevens; the said John Stevens failing to pay said note except a small amount thereof, said certificate has been since held and now is held by said bank as collateral security for the payment of said note. That no other action has been had or taken to foreclose said security.

"9

"That the signing of said note and the delivery of the certificate of deposit as collateral security for the payment thereof, was without the knowledge of the said Nancy J. Stevens."

Findings of fact following the stipulated facts were made, and from these facts the court concluded that the plaintiff was entitled to the delivery to him of the certificate of deposit described, or, in case delivery could not be had, to a judgment for $1,000, with interest at 4% from the date of the certificate; and entered judgment accordingly. From this judgment, the defendant has appealed.

The question raised is not without its perplexities.

The appellant contends that the following facts must be kept constantly in mind and are controlling, namely:

That the members of the community were the parents of the maker of the note, which was a negotiable instrument; that the certificate of deposit issued to

the husband for money deposited by him was made payable to him, thus creating a special sort of personal property the possession of which raises a presumption of title and of the right to transfer; and that it does not appear that the appellant knew that the certificate of deposit was community property.

From these facts the appellant contends,—

*First.* That the certificate of deposit, being negotiable and issued in the name of the husband, was presumably his separate property; or, if presumed to be community property, the bank had the right to assume either a sufficient consideration to the community for the use of the husband's name as an accommodation maker, or that his act in so signing was with the consent and approval of the wife.

*Second.* The husband being the managing agent of the community, with power to dispose of community personal property, had the right and authority to become an accommodation maker, thus binding the community, especially so as the act was on behalf of the son of the spouses.

And *Third.* The husband, by virtue of the statute, has power to dispose of or encumber personal property of the community, except that he cannot commit a fraud upon the community, and therefore the pledging of the community property as security for the note in question is within his power, or within the scope of his apparent authority, and does not constitute a fraud upon the community.

Upon the other hand, the respondent contends that the following agreed facts should be given special weight, namely:

That decedent and Nancy J. Stevens were husband and wife, and that all property acquired by them or either of them during coverture, including the cer-

tificate of deposit here involved, was property of the community; that, though .the principal maker of the note was the son` of the spouses composing the community, the community was in no way liable for any of his obligations; that the giving of the note by the son and the joining therein by the husband as an accommodation maker, without the knowledge of the wife, negatives any thought of her consent thereto such as would be necessary to bind the community; that the certificate of deposit was given long after the note was made; that its delivery by the husband to the bank as security for the note was wholly without the knowledge of the wife; all of which was well known to the bank. Stress is also laid upon the lack of any evidence that the certificate of deposit was indorsed by the husband; that the rights of no third parties nor innocent purchasers intervene; and that the bank parted with nothing upon the faith of the delivery of the certificate to it; that the bank had full notice and knowledge that neither the husband nor the community received any benefit from, or any of the proceeds of, the note.

Certain elements of the controversy are easily disposed of under our previous decisions:

*First:* The husband's signature to the note raises a presumption of community liability which may be rebutted. *Marquette v. National Bank of Ellensburg,* 132 Wash. 181, 231 Pac. 788; *Spokane State Bank v. Tilton,* 132 Wash. 641, 233 Pac. 15, and cases there cited. It is apparently conceded that the facts are sufficient to rebut the presumption. The trial court so found, in effect, and no exception was taken thereto and no error assigned thereon.

*Second.* The delivery of the certificate, unindorsed, long after the note was made, and the bank having

parted with nothing on the faith of that delivery, takes out of the case any questions which might otherwise be raised under the negotiable instruments law and leaves the case to be disposed of simply as involving ordinary personal property of the community.

*Third.* The real question, then, is whether the husband, who, under the statute, has the control and right of disposition of community personal property, and who, under our decisions, must exercise that control for and on behalf of the community only (*Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634), may, in effect, give community personal property to a son of the spouses by conveying or delivering it as security for the son's debt, upon which also the husband is liable as a surety for the son.

Appellant contends that the husband's power of disposition is absolute, save only that he may not perpetrate a fraud upon the community, citing in support of that proposition 31 C. J. 129; while respondent contends that in *Stewart v. Bank of Endicott,* 82 Wash. 106, 143 Pac. 458; *Schramm v. Steele, supra; Marston v. Rue,* 92 Wash. 129, 159 Pac. 111; and *Parker v. Parker,* 121 Wash. 24, 207 Pac. 1062, we have established the rule that the husband's disposition must be in the interest of the community, and that a gift of community personal property by the husband is void. The disposition considered in *Stewart v. Bank of Endicott, supra,* was made for the purpose of avoiding the law of descent, and the language quoted from that decision by the respondent must be read with that point in view; hence it does not aid us here. The language of *Schramm v. Steele, supra,* to the effect that the statute intends no more than to make the husband the statutory agent of the community, is not out of harmony with what we shall here decide. In *Marston v. Rue,*

*supra,* the property in question was given by the husband to his paramour, which clearly was a fraud upon the wife. And in *Parker v. Parker, supra,* it not appearing that either spouse was under any obligation to assist the recipient, and the extent and value of the community estate not being shown, it was held that a gift of $2,000 by the husband to his sister, who had some other means of her own, was void. While it is not so stated in the opinion, it still is possible that had it appeared that the community estate was not exhausted or seriously impaired by the gift, and that the sister was in need and that her brother (the husband who made the gift) was the person to whom she would naturally turn for assistance, the gift might have been sustained.

Coming now to the particular issue here presented, the whole transaction, including the signing of the note by the husband and the giving of the security, was for the benefit of a son of both members of the community, in whose welfare, presumably, each was equally interested. If the father was willing to sign the note, thus obligating himself individually, he was undoubtedly also willing to obligate the community to the extent of the property pledged; and if the father was so willing—unless all human experience is to be held for naught—the mother was equally, if not more, eager to assist her son. But if, as stipulated, the mother knew nothing of the matter, still the father, without a doubt, knew so certainly the mother's good will toward their son that it seemed to him idle to ask for her consent, which would certainly and willingly have been given if asked. In the absence of a showing to the contrary, these inferences flow naturally from the relationship of the parties, and the bank's officers undoubtedly so inferred when the note was made and when the security was given.

It is our view, therefore, that one of the recognized rights and privileges of a community is to assist a child of the spouses, and when the husband uses the community personal property for that purpose he will be held to be acting as the statutory agent of the community.   Since the community may legitimately so assist a child of the spouses, it may well be doubted whether any protest or non-consent on the part of the wife can defeat the power of the husband, as the statutory agent of the community, so to do.   But that question we do not now decide.   At any rate, in the absence of a showing of a specific objection made known to the person to be affected thereby, or clear proof of a general course of conduct persisted in sufficiently to give notice, showing an attitude of non-consent, both of which are lacking in this case, it will be presumed that the husband was acting for and on behalf of the community.

The judgment appealed from is reversed, with directions to dismiss the action.

HOLCOMB and MITCHELL, JJ., concur.