W. J. McNamara, *Respondent*, v. Arthur Gerbel
et al., *Appellants*.[1]

*Rummens & Griffin,* for appellants.
*Newman H. Clark,* for respondent.

Millard, J.—This action was instituted by an indorsee to recover from the defendant marital community, which owned forty-nine per cent of the shares of stock of the Great Northern Construction Company, Inc., on three promissory notes of which defendant husband and the construction company were joint makers. Trial of the cause to the court resulted in findings of fact, conclusions of law and judgment in favor of the plaintiff. The defendants appealed.

Appellants concede that, where a marital community owns stock in a going corporation, and the husband of the community joins with the corporation in executing a note evidencing the corporation's debt, it will be presumed that the note was given for the

[1]Reported in 8 P. (2d) 1001.

benefit of the corporation; and that, by so benefiting the corporation, it will also be presumed that the giving of the note was for the benefit of the community, as a stockholder of the corporation. However, insist appellants, at most, those presumptions are rebuttable, and there is no liability against the appellant community as the evidence rebuts those presumptions.

The rule is that

". . . a note given, or an obligation incurred, by a married man for the benefit of a corporation in which he is a stockholder is a community obligation, if the corporate stock is the property of the community. [Citing cases.]

"We have also held that the fact that no profit to the community resulted from the transaction is immaterial; that the test is, was the transaction carried on for the benefit of the community." *Henning v. Anderson,* 121 Wash. 53, 207 Pac. 1048.

We held, as appellants contend, in *Way v. Lyric Theater Co.,* 79 Wash. 275, 140 Pac. 320, that a note given by a married man who was a stockholder in a corporation, for the benefit of the corporation, was presumed to evidence a transaction for the benefit of the community, but that such presumption might be rebutted. We said, in the course of that opinion, that

"The fact that no profit resulted is immaterial. The test is, was the transaction carried on for the benefit of the community; not whether it resulted in a profit."

Upon the appellants was imposed the burden of rebutting the presumptions that the three promissory notes were given for the benefit of the corporation and for the benefit of the marital community stockholders. It clearly appears from the facts, which are summarized as follows, that appellants did not sustain that burden:

On February 1, 1924, the Great Northern Construction Company, Inc., and Arthur Gerbel, as joint mak-

ers, executed three promissory notes, each in the principal sum of $788.57, payable to the Hofius Steel & Equipment Company. Those notes, of which appellant wife had no knowledge, were assigned to the respondent. On the first note, appellant husband paid, up to the time of trial, three hundred dollars.

The construction company was engaged in the general contracting business in Seattle for about five years prior to the appointment of a receiver for it in March, 1924. Forty-nine per cent of the shares of stock of the corporation was owned by the appellant community. Appellant husband was the secretary and business manager of the corporation, and received a salary from the corporation and shared in its earnings when there were any.

In the summer of 1923, the construction company had three contracts: one for the construction of an apartment house and another for the remodeling of a theater building. The two jobs were completed on or about the latter part of December, 1923. On those two contracts, the construction company suffered a loss of approximately seventy thousand dollars. The third contract was for the construction of a store and garage building for the Goodwin Realty Company at a price of forty thousand dollars.

The Hofius Steel & Equipment Company furnished material for the theater and apartment contracts in an amount equal to the three notes executed by appellant husband and the construction company. The time for filing liens having expired, the Hofius company was given by the construction company a sixty-day trade acceptance for the amount due. Whether the appellant signed the trade acceptance, the record does not disclose. The trade acceptance was not introduced in evidence; in fact, no one seemed to know where it was.

About a week or ten days prior to the execution on February 1, 1924, of the three notes in controversy, appellant husband's attention was called to the fact that payment of the sixty-day trade acceptance was overdue. Gerbel testified that he told the representative of the Hofius company that the construction company was "absolutely involved" and could not pay the trade acceptance; that, as a moral proposition, he would sign as a maker with the construction company the three notes covering the indebtedness of the construction company to the Hofius company; that he and the Hofius company's representative entered into an agreement that, if the construction company was not as financially involved as he (Gerbel) stated, Gerbel was to be relieved from liability upon the notes. He testified as follows:

"Under the conditions that this credit was obtained that I would, as a moral proposition, endorse the note, which I did, and Mr. Hardenbergh reserved the right, if the statement made by me as to the financial condition of the company happened to be incorrect that he would have the right to turn these notes back and take any such measures as he should see fit immediately to protect his interest. . . . if they found that certain of my statements as to the ability of the company to pay were not correct, and they found means of getting at the company sooner than the time that these notes ran, that they would have that right,—they could protect their rights,—they would have the right to proceed. That was the main thing of them getting this simultaneous agreement. So if anybody jumped the company and they felt that there was something there that they had overlooked, that they could forget these notes and come in and do the jumping with the rest of them."

There is no corroboration of Gerbel's testimony that a written agreement was drawn in the office of the lawyer of the Hofius company; that the agreement

was made between Mr. Hardenbergh for the Hofius company, and Mr. Gerbel for the construction company; that the agreement was drawn at the time of signing the notes, and that the notes and the agreement were delivered to the attorney for the Hofius company. The attorney denied that any such agreement was made. Surely, had such an agreement been made, Gerbel would have retained the written agreement when he delivered the three notes to the Hofius company. Clearly, the appellants have failed to sustain the burden of proof as to the collateral agreement to cancel the notes.

While the construction company had lost more than seventy thousand dollars at the time the notes were given, it was still doing business. It might have been, as Gerbel testified, absolutely insolvent as shown by its books. However, it was still a going corporation. It was then engaged in constructing the store and garage building for the Goodwin Realty Company, and it continued that work until the appointment of a receiver for the construction company on March 10, 1924, which was one month and ten days subsequent to the execution and delivery of the notes. That is to say, on February 1, 1924, at the time the notes were executed, the corporation was doing business.

The three notes were the obligation of the corporation. In that corporation, appellant husband had an interest to the extent of his salary and to the further extent of any profits available out of the contracts. "The fact that no profit resulted is immaterial." *Way v. Lyric Theater Co., supra.* It was to Gerbel's interest—he was a stockholder, secretary and business manager—that the corporation should not be pressed for payment and thereby gain an extension of time of the payment of the trade acceptance. It appears, how-

ever, that the notes were given in lieu of the over-due sixty-day trade acceptance, and were made payable respectively sixty days, ninety days, and four months after date.

The notes were given to the Hofius company in payment for material furnished the Great Northern Construction Company in constructing the theater and apartment buildings. The company was a going concern; it was doing business—constructing a garage building of the contract price of forty thousand dollars for the Goodwin Realty Company—at the time of the execution and delivery of the notes. Though the construction company was in fact insolvent, it was a going concern, as it continued to transact its ordinary business. It did not go into the hands of a receiver until about six weeks after the notes were delivered, and was not adjudicated bankrupt until March 24, 1924.

The construction company and the appellant husband were joint makers of the notes. The appellant marital community owned forty-nine per cent of the stock of the corporation. The husband was a salaried officer of the company. The notes were given for the benefit of the corporation; the corporation being benefited, it will be presumed that the giving of the notes was for the benefit of the marital community as a stockholder of the corporation. That presumption the appellants have not rebutted.

The judgment is affirmed.

TOLMAN, C. J., MAIN, and HOLCOMB, JJ., concur.

BEALS, J. (dissenting in part)—In my opinion, the judgment appealed from is erroneous in so far as it runs against the community composed of appellants

as husband and wife. From the part of the foregoing opinion affirming that portion of the judgment, I dissent. I concur in the affirmance of the judgment as against appellant Arthur Gerbel.

[No. 23518.   Department Two.   March 4, 1932.]