SUN LIFE ASSURANCE COMPANY OF CANADA, *Appellant,*
v. ARTHUR P. OUTLER *et al., Defendants,* GEORGE
E. KELLOUGH *et al., Respondents.*[1]

[1]Reported in 20 P. (2d) 1110.

*Graves, Kizer & Graves,* for appellant.
*G. S. Bond* and *M. A. Marquis,* for respondents.

BLAKE, J.—Appellant, Sun Life Assurance Company of Canada, brought this action to recover the amount due on a promissory note and to foreclose a mortgage upon real property given to secure the note. The note and mortgage were given on November 28, 1919, by Arthur P. Outler and Erma, his wife, to the Western Union Life Insurance Company, and by that company assigned and transferred to the appellant. Erma Outler was a daughter of respondents, Mr. and Mrs. George E. Kellough. At and prior to the delivery of the note, George E. Kellough signed upon the back of it an endorsement as follows: ''I hereby personally guarantee the payment of the within note, waiving notice, demand and protest.'' Later, R. M. Bolt and wife became the owners of the real property, and on May 1, 1924, without surrender of the note sued on herein, the appellant entered into a written agreement with Bolt and wife and George E. Kellough, extending the time for the payment of the note and mortgage.

Mrs. Kellough was brought into the action upon the allegation that her husband's endorsement on the note created a community obligation against them. The judgment entered in the case provided that it should not operate against Mrs. Kellough, nor against the community composed of her husband and herself. The appeal is from this adverse portion of the judgment, and, as stated in appellant's brief, ''the sole question presented is whether the community is liable.''

While not controlling, it is evident that Mr. Kellough did not mean to create a community debt. His endorsement was, ''I hereby personally guarantee

the payment of the within note," etc., and at the trial he testified that his reason for taking a part in the transaction by which Outler got the land and gave the note and mortgage was: "The boy (Outler) thought he could make good, and I wanted to help him." Further, however, Mr. and Mrs. Outler were not in any way connected in business with Mr. and Mrs. Kellough. Neither Mr. nor Mrs. Kellough was indebted to Mr. and Mrs. Outler, or either of them. It was not understood that Mr. and Mrs. Kellough, or either of them, should occupy the property or in any way profit by the transaction consisting of the purchase of the land for which the note and mortgage were given.

The Attalia Vineyard Company, a corporation, owned the land involved in this controversy, which, with other lands, was covered by a mortgage which appears to have been much greater in amount than the value of all the land. To carry out the deal with Mr. Outler, the mortgagee released its mortgage upon that portion of the land Outler wanted, so that the corporation could and did convey it to him, whereupon he gave to the mortgagee the note and mortgage involved in the action.

Because Kellough and wife owned a small amount of stock in the Attalia Vineyard Company, it is argued, on behalf of the appellant, that his endorsement of the note constituted the prosecution of a community enterprise, because, as stockholders in the corporation that conveyed the land to Outler, they were interested in the matter in a financial way. The rule in mind is not applicable in this case, because the corporation did not give the note or receive, nor was it intended that it should receive, anything whatever out of the transaction. Indeed, it was not doing business at that time and had not been for some time, as all the parties to the transaction knew.

The trial court, at the conclusion of the case, stated that, at the time of the transaction, the corporation known as Attalia Vineyard Company was not a going concern; that it had ceased to carry out the purposes for which it was incorporated; that, on account of mortgages and other indebtedness owing by the Vineyard Company, it was, had been, and continued to be, insolvent; that it was not a party to the negotiations or transaction, and received no consideration whatever from it; and that

"The corporation, that is the Vineyard Company, was not engaged in any kind of business at that time, and consequently this transaction could not have been in the interest of the corporation, because it had no financial interest which was of any value whatever."

The evidence overwhelmingly supports those statements and conclusions on the part of the trial court.

Another argument on behalf of the appellant is that the extension agreement, signed by Bolt and wife and George E. Kellough in 1924, created a community debt as against Mr. and Mrs. Kellough. With that contention, we do not agree. Bolt and wife wanted an extension of time in which to pay the balance due on the mortgage upon their property, which, it appears, the mortgagee was willing to give upon its being arranged that Mr. Kellough should not be relieved from his obligation as endorser of the original note. Accordingly, it was provided in the extension agreement:

"In consideration of the extension hereby granted, Mr. Kellough does hereby consent and agree to remain bound as endorser and guarantor of said indebtedness, according to the terms and conditions of said original note."

There was nothing about the extension agreement that converted or changed the individual debt of Mr.

Kellough into a community debt of himself and his wife.

If an obligation is created by the husband alone, as surety or guarantor, and is not done in aid of or for the community, even if the endorsement should recite "value received," the community is not liable. *Spokane State Bank v. Tilton,* 132 Wash. 641, 233 Pac. 15, and cases cited. The test of a community obligation is: "Was the transaction carried on for the benefit of the community?" *Way v. Lyric Theater Co.,* 79 Wash. 275, 140 Pac. 320; *Henning v. Anderson,* 121 Wash. 53, 207 Pac. 1048. To the same effect, see *McNamara v. Gerbel,* 167 Wash. 56, 8 P. (2d) 1001.

Appellant cites several cases. First, we notice *Pierce v. Lowenthal,* 161 Wash. 336, 295 Pac. 1021. The specific facts upon which it was held in that case that a community debt was created are not set out clearly enough in the decision to make it helpful here, but the court, in connection therewith, cites with approval *Kuhn v. Groll,* 118 Wash. 285, 203 Pac. 44, which was a case wherein it was held that a husband's note for the repurchase of stock in a corporation was held to create a community obligation. That is the common rule.

*Reed v. Loney,* 22 Wash. 433, 61 Pac. 41, cited on behalf of the appellant, was a case in which John Loney and his father, Charles, signed notes, payable to a third person, in consideration of a conveyance of real property to John by the third person. Both signed the notes as principals. Judgment was obtained upon the notes against John and his father. Thereafter, in the case of Reed v. Charles Loney and wife and their two other sons, William D. and C. C. Loney, it became necessary to determine if the judgment on the notes signed by John and Charles, as principals, were the community debts of Charles and his wife, Charlotte, parents of

John. It was decided that they were community debts. An examination of the record in that case makes it plain that, for five years after becoming of age, John worked for his father without any agreement, express or implied, to be paid *wages* during that service, but it was understood that, later on, the father would help him get a farm—that is, an implied promise to pay for the labor his son John had performed on the father's farm. Speaking of the judgment in the first suit against John and his father on the notes, it was said:

"The judgment was recovered upon joint and several notes executed by John T. and Charles Loney for the purchase price of a tract of land conveyed by plaintiff to said John T. Loney, and in the action in which judgment was rendered it was expressly determined that the said Charles Loney joined in the execution of said notes as principal. John T. Loney was a son of Charles and Charlotte Loney, and had worked on his father's farm for about five years after becoming of age, without receiving compensation therefor. His father, however, had, according to his son's testimony, promised to help him get a start in life, and, with that object in view, had joined in the execution of the notes given for the land conveyed to him."

And again, in that case it was said:

"We think that the community character of the debt upon which the judgment against Charles and John T. Loney was founded was satisfactorily established. It had already been determined that Charles Loney was a principal, and not a surety, on the notes sued on. The presumption, where a promissory note is executed by the husband, is that it evidences a community debt, and there is nothing in this case to overthrow such presumption. On the contrary, there is proof showing that the father had, in carrying out a previous promise to assist his son John T. Loney in getting a start, assisted him in buying the land, joined him in giving notes for the purchase price, agreed to help him pay them off, and, in fact, paid $1,015 thereon."

Thus, the community character of the obligation created by the signature of the father was established by affirmative proof. There is nothing of that kind in the present case.

■ The case of *Stevens v. Naches State Bank,* 136 Wash. 137, 238 Pac. 918, is cited by appellant upon the question of community obligation and the power of the husband as a statutory agent of a marital community. The case related to a pledge, by a husband, of community personal property as collateral to a note signed by him as an accommodation maker for a son, the principal maker of the note, without compensation to the father or the marital community of which he was a member. The suit was brought by the administrator of the father's estate to recover the personal property from the pledgee. After stating the contentions of the respective parties, the court said that the question of community liability was not involved, that the trial court had found that the presumption of community liability arising from the husband's signature to the note had been overcome, and that no exception had been taken to that finding and no error assigned thereon.

The court further said, in substance, that the real question is whether a husband may, in effect, give community personal property to a son of the spouses by conveying or delivering it as security for the son's debt, upon which the husband is liable as a surety. Then, language was used which the appellant in the present case sets out in full in its brief, asserting that it is controlling on this branch of the case at bar; that language being as follows:

"Coming now to the particular issue here presented, the whole transaction, including the signing of the note by the husband and the giving of the security, was for the benefit of a son of both members of the community, in whose welfare, presumably, each was equally interested. If the father was willing to sign the note, thus

obligating himself individually, he was undoubtedly also willing to obligate the community to the extent of the property pledged; and if the father was so willing —unless all human experience is to be held for nought —the mother was equally, if not more, eager to assist her son. But if, as stipulated, the mother knew nothing of the matter, still the father, without a doubt, knew so certainly the mother's good will toward their son that it seemed to him idle to ask for her consent, which would certainly and willingly have been given if asked. In the absence of a showing to the contrary, these inferences flow naturally from the relationship of the parties, and the bank's officers undoubtedly so inferred when the note was made and when the security was given.

"It is our view, therefore, that one of the recognized rights and privileges of a community is to assist a child of the spouses, and when the husband uses the community personal property for that purpose he will be held to be acting as the statutory agent of the community. Since the community may legitimately so assist a child of the spouses, it may well be doubted whether any protest or non-consent on the part of the wife can defeat the power of the husband as the statutory agent of the community, so to do. But that question we do not now decide. At any rate, in the absence of a showing of a specific objection made known to the person to be affected thereby, or clear proof of a general course of conduct persisted in sufficiently to give notice, showing an attitude of non-consent, both of which are lacking in this case, it will be presumed that the husband was acting for and on behalf of the community."

As we understand, the gist of the argument on behalf of the appellant, that the language quoted is applicable in the present case, is that this case and that one are similar in their ultimate legal aspects; and that, under the law in this state, as declared in *Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634,

" . . . that the management and control conferred by statute (Id., [Rem. Code] §§ 5917 and

5918) on the husband as to both species of property [real and personal], though differing in its extent as to the two kinds, is a management and control *for the community and in the community interest,"*

to approve of the holding in that case leads to a finding and judgment of community liability of Kellough and wife in this case. Necessarily, that is the effect of appellant's contention.

The application of the principle of that case to the case at bar would simply mean that the husband's endorsement, without consideration, of the son-in-law's note would create a community obligation—this upon the theory that the wife, prompted by maternal affection, would be presumed to give her consent and approval to the transaction, even though she did not know about it. Such an act of a husband, depending upon the assumption of knowledge of his wife's affection for their child, does not meet the test of business or benefit to the community. It is an unwarranted extension of his power as statutory agent, by such an act to create a community obligation. Hitherto, his power as such statutory agent has been measured by benefit to the community—material benefit to the community.

The marital community, with respect to the subject matter under consideration, is essentially a business concern, and the power of its manager, the husband, should be controlled strictly by his statutory authority, not by what may appear on the surface to be the promptings of a generous paternal impulse. Otherwise, without consent or knowledge of the wife, the community estate may be depleted by transactions in which it can have no possible chance to benefit. In our opinion, the principle involved in that portion of *Stevens v. Naches State Bank,* 136 Wash. 137, 238 Pac. 918, embraced in the language referred to, is unsound, and to that extent the case is overruled.

The proof in this case, by a strong preponderance, rebutted the presumption of community debt arising from Mr. Kellough's endorsement and signature on the back of the promissory note in question.

Judgment affirmed.

BEALS, C. J., MILLARD, MITCHELL, MAIN, and STEIN-ERT, JJ., concur.

HOLCOMB, J. (dissenting)—I am unable to concur with the prevailing opinion, either in the reasoning or result.

In the first place, I emphatically oppose overruling the *Stevens* case, *supra,* because it was correctly decided, and this manifests inconsistent vacillation in the law of this jurisdiction.

Furthermore, if this decision is right, that in *Olympia Building & Loan Assn. v. McCroskey, ante* p. 148, 19 P. (2d) 671, in which I did not concur, is wrong.

The record here shows that all the property belonging to Kellough was community property acquired after marriage, over all of which he was the statutory agent. It also shows that Arthur Outler, who had married the daughter of respondents, had no money, but desired to take over two tracts of land belonging to the Attalia Vineyard Company, a corporation, principally owned by respondents; and was willing to pay for the land twelve thousand dollars if given time in which to make the payments, and if Kellough would endorse his note. There was a mortgage on the entire tract of land belonging to the Vineyard Company of fifteen thousand dollars. Kellough thought Outler would make good, and he wanted to help him, and agreed to endorse his note. He so told the president of the insurance company. The purchase was accordingly made by Outler and the note guaranteed by Kellough. Within a few months thereafter, it became

necessary for Kellough to further assist Outler finan-cially; and he loaned or arranged loans to Outler ag-gregating eleven thousand dollars, all of which went into the land.

The knowledge, approval, or disapproval of Mrs. Kellough of the transactions was immaterial, if the original guaranty made by her husband bound the community. *Capital National Bank v. Johns,* 170 Wash. 250, 16 P (2d) 452. Compare *Baker v. Murrey,* 78 Wash. 241, 138 Pac. 890; *Bellingham Motors Corpora-tion v. Lindberg,* 126 Wash. 684, 219 Pac. 19.

Respondents concede that the rule in this state is that, when an instrument is signed by the husband, under our community property statutes the community is presumptively bound thereby *(Schramm v. Steele,* 97 Wash. 309, 166 Pac. 634; *Olive Co. v. Meek,* 103 Wash. 467, 175 Pac. 33), but contend that, since it is shown that Kellough signed the note as a guarantor, without receiving any value or consideration therefor, the transaction was not one for the benefit of the com-munity.

Cases involving the suretyship, or accommodation making, of a note, or undertaking, by a husband for a total stranger or unrelated party have no force here: *Case Threshing Machine Co. v. Wiley,* 89 Wash. 301, 154 Pac. 437; *Kanters v. Kotick,* 102 Wash. 523, 173 Pac. 329; *Marquette v. National Bank of Ellensburg,* 132 Wash. 181, 231 Pac. 788; *Spokane State Bank v. Tilton,* 132 Wash. 641, 233 Pac. 15; and *Peterson v. Zimmerman,* 142 Wash. 385, 253 Pac. 642.

It should not be considered that Mrs. Kellough would have been any more parsimonious or indifferent toward their daughter, than her husband. This is not a case involving an accommodation maker of a note for an entire stranger, or becoming surety on such note, or of a valuable gift of personal property by a husband

to a paramour, as in *Marston v. Rue,* 92 Wash. 129, 159 Pac. 111, nor of a gift to a relative of the husband but not of the wife, as in *Parker v. Parker,* 121 Wash. 24, 207 Pac. 1062.

"It was an act certainly of more beneficial interest to the community than to the husband alone." *Reed v. Loney,* 22 Wash. 433, 61 Pac. 41.

Compare *Pierce v. Lowenthal,* 161 Wash. 336, 295 Pac. 1021.

It is clear that respondents did not overcome the presumption of the community character of the guaranty of the indebtedness by any substantial and preponderating evidence, and the judgment should be reversed.

TOLMAN, J., concurs with HOLCOMB, J.