[No. 323-2.   Division Two.   April 29, 1971.]

THE STATE OF WASHINGTON, *Respondent*, v. EMERY BERG, *Appellant.*

*Emery Berg,* pro se.

*John C. Merkel, Prosecuting Attorney,* and *Jack D. Evans, Deputy,* for respondent.

PETRIE, C.J.—On October 6, 1969, Emery Berg, the owner and operator of an auto-wrecking yard, was arrested and charged with a violation of RCW 46.80.020, operating as a motor vehicle wrecker without having a license. That statute states:

> Any motor vehicle wrecker, as defined herein, who shall engage in the business of wrecking motor vehicles or trailers without having first applied for and received a license from the director of motor vehicles authorizing him so to do shall be guilty of a gross misdemeanor, and upon conviction shall be punished by imprisonment for not less than thirty days or more than one year in jail or by a fine of one thousand dollars.

Mr. Berg was found guilty in the district court on November 17, 1969. On appeal to the superior court he was tried to a jury and found guilty as charged. In both trials and on this appeal, Mr. Berg has chosen to appear pro se.

The apparent simplicity of this case is rather deceiving for the series of events which preceded this action, were, at the very least, confusing. For our present purposes, we may say that it all began in July of 1968 at which time Mr. Berg applied for renewal of his license as a motor vehicle wrecker. His application for renewal was not only late, requiring the additional payment of a late fee,[1] but was also submitted without the signature of a state patrol officer or of an authorized representative of the Department of Motor Vehicles as required by RCW 46.80.030(3).[2] Whatever the deficiencies of his application for renewal, the Department of Motor Vehicles—Division of Professional Licensing did not notify Mr. Berg as to whether or not his license would be renewed, nor did it return his application or renewal fee. Later in January of 1969, Mr. Berg filed an application for renewal of his license for the year July 1, 1969 to June 30, 1970. Once again the application did not contain one of the required signatures. Approximately 4 months later, the Division of Professional Licensing served him with a notice of intent to deny or revoke, or suspend his license as

[1] See RCW 46.80.050—"A license issued on this application shall remain in force until suspended or revoked and may be renewed annually upon reapplication according to RCW 46.80.030 and upon payment of a fee of ten dollars. Any motor vehicle wrecker who fails or neglects to renew his license prior to July 1, shall be required to pay the fee for an original motor vehicle wrecker license as provided in this chapter.

"Whenever a motor vehicle wrecker shall cease to do business as such or his license has been suspended or revoked, he shall immediately surrender such license to the director."

[2] "Certificate of approval of the chief of police of any city or town having a population of over five thousand persons and in all other instances a member of the Washington state patrol certifying that:

"(a) The applicant has an established place of business at the address shown on the application, and;

"(b) In the case of a renewal of a vehicle wrecker's license, the applicant has been complying with the provisions of this chapter and the provisions of *chapter 46 relating to registration and certificates of title: Provided, That the above certifications in any instance can be made by an authorized representative of the department of motor vehicles; . . ."

an auto-wrecker.[3] Mr. Berg requested and received a hearing on June 2, 1969. On September 19, 1969 a proposed order revoking his motor vehicle wrecker's license was entered. However, prior to the entrance of a final order, Mr. Berg was arrested and charged in the present case. Mr. Berg then found himself in the somewhat puzzling position of being arrested for not possessing a license which had not been issued because the Division of Professional Licensing was in the process of revoking it. Unfortunately, the fates had not yet finished with Mr. Berg. On November 6, 1969, the final order revoking his license was entered, and he promptly appealed to the Thurston County Superior Court. On November 12, 1969 in the district court for Kitsap County, Mr. Berg was found guilty of operating as a motor vehicle wrecker without a license on October 6, 1969 and appealed. On December 8, 1969, the Thurston County Superior Court stayed the revocation of his license during his appeal. If Mr. Berg was not thoroughly confused at that point, he most certainly was on January 8, 1970 when he received his licenses for the years 1968-1969, 1969-1970 from the Department of Motor Vehicles—Division of Professional Licensing. Despite having obtained an order from the Thurston County Superior Court staying the revocation of his license during appeal from the department's final order, and despite having received his licenses for the years in question, Mr. Berg was tried to a jury in the Kitsap County Superior Court on February 17, 1970 and found guilty of having operated as a motor vehicle wrecker without a license on October 6, 1969. He then appealed.

Prior to his application for renewal in 1968, Mr. Berg had apparently been a licensed motor vehicle wrecker for many years. His license in effect for the year 1967-1968 was the one he sought to renew in July of 1968. Admittedly, his application did not conform to the statutory requirements

---

[3] See RCW 46.80.110—"If for a good and sufficient cause the director has reason to believe that the application for motor vehicle wrecker's license or renewal of motor vehicle wrecker's license should be denied, he may refuse to issue such license and shall notify the applicant to that effect."

but the department took no action on either application until April of 1969. At that time it began proceedings to revoke his wrecker's license under RCW 46.80.110. The obvious question is what was Mr. Berg to do with his business during this long period between application for renewal and final revocation? We believe the answer lies in a combined reading of RCW 46.80.110 and RCW 34.04.170(1). The latter statute, a section of the Administrative Procedures Act reads as follows:

(1) When a licensee has made timely and sufficient application for the renewal of a license or a new license with reference to any activity of a continuing nature, an existing full, temporary, or provisional license does not expire until the application has been finally determined by the agency, and, in case the application is denied or the terms of the new license limited, until the last day for seeking review of the agency order or a later date fixed by order of the reviewing court.

The terms employed by the legislature are quite clear; an existing license does not expire until one's application for renewal has *finally* been determined by the agency involved; and if the agency's determination is appealed from, it will, in the usual course, not expire until the appeal has been decided. We believe the obvious intent of the legislature was to assure the businessman who had made application for renewal that he could legally continue his operations at the very least until the responsible agency had made a final determination. When this statute is read together with the language of RCW 46.80.110, one can only conclude that when a renewal application has been filed, the agency must take either affirmative or negative action; and agency inaction only preserves the effectiveness of one's present license.

In view of our preceding statements, we must agree with appellant Berg that on October 6, 1969, he was lawfully operating as a motor vehicle wrecker. By virtue of RCW 34.04.170, his 1967-1968 license had not yet expired. Consequently, there is no legal basis for the charge against the appellant. To hold otherwise would be to allow the inaction

of one state agency, charged with a duty to act, to convert a man's legal operation into a criminal operation for which another state agency may arrest him. We cannot condone such a result.

The judgment and sentence is reversed and this charge dismissed.

PEARSON and ARMSTRONG, JJ., concur.