[No. 268-41350-2.   Division Two.   May 19, 1971.]

*In the Matter of the Estate of* ROY G. TRIERWEILER, *Deceased.*

*Tyler C. Moffett* (of *Conniff, Taylor, Moffet & Behrhorst*), for appellant.

*William P. Fite* (of *Hullin, Roberts, Mines & Riveland*) and *Nathan G. Richardson,* for respondent.

PEARSON, J.—This appeal involves the propriety of an equitable lien of $12,750 granted to a surviving spouse (respondent) on the deceased's separate real property.

The two adult children of Roy Trierweiler, deceased, challenge the final account and decree of distribution entered in his estate, the effect of which was to distribute his entire estate (largely his separate real property) to his surviving spouse, Phyllis Trierweiler.

Roy Trierweiler died intestate on June 22, 1967. The decedent was survived by his third spouse, Phyllis Trierweiler (administratrix), whom he had married on February 19, 1960, following the death of his second wife, Mary E. Trierweiler. He also was survived by two children, James Trierweiler and Betty Greenman, who are the contestants and appellants herein. These adult children were issue of deceased's first marriage. There are no creditors involved in this dispute.

The inventory and appraisal shows real property in the estate valued at $50,000. However, this property was encumbered by a $9,500 mortgage, so that its net value is $40,500. The real property was concededly deceased's separate property. Itemized personal property was valued at $5,861.77. Of this sum, $3,661.77, consisting of household furnishings, automobiles, and a bank account, must be characterized as community property, which passed to respondent by virtue of a community property survivorship agreement.[1]

We thus are left with a net estate consisting of real property valued at $40,500 and personal property valued at $2,200, all of which is conceded to be the deceased's separate property and all of which was awarded the surviving wife.

---

[1]This agreement did not convert previously acquired separate property into community property. *But see In re Estate of Verbeek,* 2 Wn. App. 144, 467 P.2d 178 (1970).

Had the trial court strictly followed the statute of descent and distribution (RCW 11.04.020), which was in effect at the time of Roy Trierweiler's death, respondent was entitled to one-third of the separate real property ($12,525) subject to the debts. According to RCW 11.04.030, she was entitled to one-half the separate personal property, after first charging such portion of the estate with a family allowance, debts, and costs of administration. The balance of the separate estate, also subject to the debts, would be shared equally by appellants.

Respondent was, in fact, granted a family allowance of $4,500, which would entirely deplete the separate personal property ($2,200) and she would be entitled to a $2,300 lien for the balance, chargeable against the separate real property.

■■ The trial court also, upon proper petition, granted respondent an award in lieu of homestead in the sum of $10,000. This award is challenged by appellants. The law governing an award in lieu of homestead is the law in effect at decedent's death. *In re Estate of Buhakka,* 4 Wn. App. 601, 484 P.2d 463 (1971). Since the deceased died on June 22, 1967, the Laws of 1963, ch. 185, § 1 are applicable.[2] Under that statute, the trial court was authorized to grant a $10,000 award in lieu of homestead from the separate property of the deceased spouse which was not otherwise disposed of by will. The award was a matter of statutory right. *In re Estate of Wind,* 32 Wn.2d 64, 200 P.2d 748 (1948). So long as the statutory limit is not exceeded, it is proper to award an undivided interest in a home which has a value in excess of the statutory limit. *In re Estate of Williams,* 31 Wn.2d 303, 196 P.2d 340 (1948). We hold that the award was proper in this case.

Costs of administration in the sum of $2,925 are also properly chargeable against the deceased's separate real property under the circumstances of this case.

When all of these properly chargeable items are deducted

---

[2]The subsequent change of such law is commented on in *In re Estate of Buhakka, supra.*

from the net value of the estate, we find that there was remaining for potential equal distribution to the two appellants, $12,750, all categorized as their statutory interest in their father's separate real property.

In awarding the entire estate to respondent, the trial court in effect allowed an equitable lien because of certain investments respondent made which improved or preserved deceased's separate estate and because her separate funds were used during the course of the marriage to support the marital community.

The series of transactions from which the trial court's equitable lien theory evolved commenced in 1958. In that year, Roy Trierweiler and his second wife, Mary, entered into a partnership with one Hopp, concerning a yarn manufacturing business. To this end, Hopp was granted a beneficial interest in a tract of land owned by the Trierweilers and a building was constructed in order to carry on the business. Completion of the building depleted the capital of the partnership and consequently Roy Trierweiler approached respondent and her then husband (Douglas Baker) in search of operating capital.

The Bakers agreed to invest up to $10,000, plus $250 monthly, in a new corporation which was formed, and in return they received 103 shares (one-half) of stock in the corporation. Hopp did not desire to invest in the corporation, so the sum of $8,000 which Trierweiler had obtained from Bakers was paid to Hopp in exchange for a release of his interest in the yarn factory to Roy Trierweiler.

Subsequent to this initial $10,000 investment, respondent and her husband (Baker) were divorced and she was awarded the 103 shares of stock in the yarn company. She also received $15,000, payable at $300 per month as part of the divorce settlement. She invested this monthly sum in the yarn business until she had contributed an additional $5,000. Then in February, 1960, she and Roy Trierweiler were married. She continued to receive the $300 per month from her divorce settlement, which she continued to invest in the yarn company. In addition, respondent expended

much labor in the business, since during most of her marriage Roy Trierweiler was severely ill and she was left to manage the business alone.

So far as the record shows, neither the real property nor any other asset of the yarn business was ever transferred to the corporation. Although not formally dissolved, the corporation does not appear to have been utilized as a business entity after 1962. In any event, the business never was a very profitable one, and in fact lost money through much of its existence.

It is first contended by appellants that the trial court erred in disregarding the corporate entity. The contention is that all separate funds which respondent invested went into a losing corporate venture and should not be available as establishing an equitable interest in deceased's real property.

As we stated above, the corporation, though never dissolved, does not appear to have been used after 1962. More important, however, what evidence there is in the record indicates that the deceased treated the business as his own, rather than that of the corporation. The assets of the business stood in his name. When the Hopps released their interest in the partnership, they did so to Roy Trierweiler, and not to the corporate entity. Respondent's funds were used to pay Hopp, which extinguished his partnership interest in the business, which at that time included the real property. We thus agree with the trial court's disregard of the corporate existence, as did its shareholders. *See Pohlman Inv. Co. v. Virginia City Gold Mining Co.*, 184 Wash. 273, 51 P.2d 363 (1935); *Kueckelhan v. Federal Old Line Ins. Co.*, 69 Wn.2d 392, 418 P.2d 443 (1966).

It also appears clear that whatever interest the Baker community had in the yarn business passed to Phyllis Baker at the time of her divorce. The stock held by the Baker community was awarded to her by the divorce settlement and this we believe gave her the sole benefit of the investment ($10,000) of her former marital community. After her divorce, Phyllis Baker continued to invest in the

business. The trial court had before it substantial evidence that at the time of her marriage to Mr. Trierweiler respondent had invested $15,000 in the business.

■ Even if respondent is regarded as a business associate of the deceased before the marriage, we think that the marriage changed the relationship of the spouses. After the marriage, the testimony establishes that respondent invested another $15,000 of her separate property in the business and the land it stood on. Part of these funds went to pay taxes on the land. Improvements to the private roadway that provided access to the land and business also came from respondent's separate funds, as did monies expended to improve a house situated on the land. Since the business continued to earn little or nothing in profits, respondent's separate funds went to pay various obligations due creditors. We believe there was substantial evidence to support the trial court's finding that respondent's separate funds were used to pay for about $4,000 in specific improvement to the land in question. These included improvements to the house and outbuildings on the land, repair of an access road, and payment of property taxes. We think that the trial court was justified in impressing an equitable lien on the land for the amount of $4,000. As long ago as *Legg v. Legg,* 34 Wash. 132, 75 P. 130 (1904), there was recognized a right to reimbursement for the community for funds expended in improvement of separate property. In *Conley v. Moe,* 7 Wn.2d 355, 110 P.2d 172, 133 A.L.R. 1089 (1941), a community lien for expenditures on separate property was recognized. *See* Bartke, *Yours, Mine and Ours—Separate Title and Community Funds,* 44 Wash. L. Rev. 379 (1969). We see no reason why a similar lien should not exist where the separate property of one spouse is used to improve the separate property of the other. It seems to us that the lien should arise whenever property of one of the three characters (separate property of husband, separate property of wife, or community property) is used to improve property of either of the other two sorts. *See* Cross, *The Community Property Law in Washington,* 15

La. L. Rev. 640 (1955). Thus, we hold that the respondent held a $4,000 lien for improvements made with her separate property on the separate real property of her late spouse.

As we noted above, the testimony indicates that the business here made little, if any, profits. Substantial evidence points toward the fact that the balance ($11,000) of the separate funds of respondent expended after her marriage to Roy Trierweiler went to pay community debts and generally kept the community financially afloat. Most of these expenditures were for items covered by RCW 26.16.205.[3] Others of these expenditures were not within this statute, but we are unable to determine from the evidence how much of the $11,000 was expended for improvements for which the wife's separate estate should receive a lien on the deceased's separate estate. We will, thus, presume all the expenditures were within RCW 26.16.205. Under RCW 26.16.205, the separate property of the spouses may be held for obligations incurred as family expenses or education expenses. This obligation is a joint and several one, however. *Roller v. Blodgett*, 74 Wn.2d 878, 447 P.2d 601 (1968); *Hector v. Hector*, 51 Wash. 434, 99 P. 13 (1909). Thus, where one spouse makes payment for the total amount of such expenditures, he or she is entitled to contribution from the other spouse. *See Hinson v. Hinson*, 1 Wn. App. 348, 461 P.2d 560 (1969) where such right of contribution was recognized following a divorce. Likewise, we believe respondent is entitled to contribution from the separate estate of the deceased, to the extent of at least $5,500 in this case.

This leaves a balance of $3,250. We think the trial court was justified in allowing respondent credit for this amount by virtue of the uncompensated labor she expended during her marriage to Roy Trierweiler. The evidence indicates that the business was operated on a 7-

---

[3]This section reads: "The expenses of the family and the education of the children are chargeable upon the property of both husband and wife, or either of them, and in relation thereto they may be sued jointly or separately." (Amended by Laws of 1969, Ex. Ses., ch. 207, § 1.)

days-a-week basis, the year around. Someone had to be available to serve customers at all these times. Respondent did much of this work. For the last several years of his life, Roy Trierweiler was rendered an invalid by a series of heart attacks. Respondent cared for him as well as for the business. For this work, she received little or nothing, since the business was making almost nothing. The community depended on her labor and her continuing infusions of separate property to remain solvent. The value of the wife's labor earned during marriage is community property.

We think that the community has an equitable lien for the value of the uncompensated services of the wife, rendered in maintenance of the husband's separate business.[4] See Legg v. Legg, supra; Cross, The Community Property Law in Washington, 15 La. L. Rev. 640 (1955). There is substantial evidence to support the trial court's determination that in equity and in fairness, respondent, as the survivor of the community, should be reimbursed for her labor in such separate business as against those who contributed nothing toward either the business or the land.

The order approving final account and decree of distribution is affirmed.

PETRIE, C.J., and ARMSTRONG, J., concur.

Petition for rehearing denied June 24, 1971.

Review denied by Supreme Court July 23, 1971.

---

[4] We think that the evidence presented is sufficient to meet the standard of certainty set out in Pekola v. Strand, 25 Wn.2d 98, 168 P.2d 407 (1946). Since the value of the wife's labor is community property, we think that the labor expended by the wife here is chargeable as a lien against the separate business of the deceased. Thus, we think the Legg rule is the better law. In addition, the Pekola court did not directly discuss the problem now before us.