[No. 7670-1-I. Division One. July 28, 1980.]

BANK OF WASHINGTON, *Appellant,* v. HILLTOP SHAKEMILL, INC., ET AL, *Respondents.*

---

*Craig P. Hayes, Martha V. Gross,* and *McCush, Kings-bury, O'Connor, Ludwigson, Thompson & Hayes,* for appellant.

*Sam Peach,* for respondents.

SWANSON, J.—Bank of Washington appeals from a judgment dismissing its claim against the marital community of Robert and Elaine Starry.

In 1977 and 1978, Bank of Washington made four loans totaling $73,531.59 to Hilltop Shakemill, Inc., a Washington corporation formed by Mark Starry and D. H. Buckenmeyer. Before the loans were issued, Robert Starry, Mark Starry's father, executed a "General Guaranty" in which he promised on behalf of himself and his marital community to guarantee payment of all of Hilltop's obligations to the Bank of Washington.[1] Neither Robert Starry nor the bank

---

[1] The guaranty stated in pertinent part:

informed Starry's wife of the guaranty. The bank's records indicate that Robert Starry told the bank that he executed this guaranty "to help his son."

Earlier in 1977, Robert Starry had executed his personal guaranty on a $5,000 loan from Seattle–First National Bank to Hilltop, also without informing his wife. Again, the bank's records indicate that Robert Starry executed this guaranty intending to help his son. This loan became delinquent in September 1977, and Hilltop sought the first loan from Bank of Washington in part to repay the Seattle–First National loan.

Robert Starry was a partner in Alpine Excavating, an apparently prosperous road construction and logging business. In 1977 and 1978, Alpine did occasional business with Hilltop. Alpine hauled cedar logs for Hilltop for a fee of $360 and sold cedar blocks worth some $12,000 to Hilltop, for which it was never paid. Robert Starry at times gave business advice to Hilltop through Buckenmeyer.

Hilltop defaulted on the loans from Bank of Washington, and the bank filed suit against Hilltop, Mark Starry, Buckenmeyer, Robert Starry, and against the Starrys' and Buckenmeyers' marital communities. Summary judgment was granted against Hilltop, the Mark Starrys, and the Buckenmeyers. At trial against the remaining defendants, Robert Starry and his wife Elaine, Bank of Washington

---

"In consideration of financial accommodations given or to be given to Hilltop Shakemill, Inc. (herein called the Customer) by Bank of Washington (herein called the Bank), and in consideration of the Bank's agreeing to deal with the Customer, the undersigned, on behalf of themselves and of the marital communities consisting of themselves and their respective wives, if married, hereby jointly and severally guarantee payment to the Bank of all liabilities and indebtedness which the Customer has incurred or is under or may incur or be under to the Bank, whether arising from dealings between the Bank and the Customer or from other dealings by which the Bank may become in any way a creditor of the Customer.

". . .

"If the Customer is a corporation, the undersigned guarantee and represent that they are stockholders, or directors or officers and/or are financially interested in the Customer, and if married, their marital communities are so interested."

contended that Robert Starry executed the general guaranty intending to benefit his marital community economically and that, therefore, his marital community should be liable for the defaulted loans.

The trial court disagreed, dismissed the claim against the marital community, and entered judgment against Robert Starry individually. The court found that the hauling business Alpine did for Hilltop "was casual and inconsequential" and that the business advice Robert Starry gave to Buckenmeyer "was fatherly advice to help his son." The court concluded that the community of Robert and Elaine Starry "did not expect to receive any economic benefit as a result of Robert Starry's execution [of] the general guarantee" and that the community was not liable for Hilltop's obligations to the Bank of Washington.

Bank of Washington argues on appeal primarily that the trial court erred by (1) failing to apply a presumption that the community was liable for the debt and (2) concluding that the community did not expect to benefit economically from the loan guaranty. The bank also argues that the community is estopped from denying community liability.

■ A suretyship debt or obligation of one of the spouses creates a presumption of a community obligation. *Warren v. Washington Trust Bank,* 19 Wn. App. 348, 575 P.2d 1077, *modified,* 92 Wn.2d 381, 598 P.2d 701 (1978). The party seeking to avoid the obligation has the burden of rebutting this presumption by clear and convincing evidence. *Warren v. Washington Trust Bank, supra.* The presumption may be rebutted by a showing that the spouse incurring the debt or obligation did so without "the intention or expectation, at the inception of the transaction, . . . that a material economic benefit would accrue to the community." (Footnote omitted.) *Warren v. Washington Trust Bank, supra* at 360. *See Sun Life Assurance Co. of Canada v. Outler,* 172 Wash. 540, 20 P.2d 1110 (1933).

Bank of Washington argues that the trial court failed to apply the presumption of a community obligation. The

bank points out that the court never referred to the presumption and that the court said in its oral opinion:

> It seems to me that the testimony of Mr. Wagner and Mr. Lusby and what was said in the bank's statement at [Seattle–First National Bank] and everything that Mr. Starry was doing, doing what he thought was the right thing, he was trying to help his boy get a start, and there's certainly nothing that I could ever infer from the evidence, or deduce therefrom, not even a scintilla, that this was at all meant where there might be any economic advantage for the community of Mr. Starry.

The bank contends that this quotation showed that the court looked for evidence from the bank of an economic benefit rather than evidence from the Robert Starrys of a *lack* of economic benefit to dispel the presumption of community liability.

■ The bank's arguments are ill–founded. The court's references to the testimony of Wagner and Lusby and to the "bank's statement" show that the court initially looked to testimony adduced by the Starrys to overcome the presumption of community liability. Wagner was president of Bank of Washington at the time of trial and was head of the bank's loan committee when the loans to Hilltop were made. Wagner testified under cross–examination by the Starrys' counsel that the bank knew Robert Starry "was not in Alpine Excavating to financially gain out of . . . Hilltop . . ."[2] Lusby was president of the bank when the loans to Hilltop were made. Under cross–examination by the Starrys' counsel, he testified that he understood Robert

---

[2] Wagner also testified under recross–examination:

Q. [from the Starrys' counsel] Well, do you have anything to indicate that Bob Starry could have profited by this [loan to Hilltop]?

A. No. At the time the loan was consummated?

Q. Sure.

A. No.

Q. And you have no independent knowledge now that he was going to personally profit by this?

A. Not at all, not at all.

Starry had no personal income from Hilltop and, by guaranteeing the loans, was just trying to help his son.[3] Both men testified under cross–examination that they had no knowledge of any contact between the bank and Robert Starry's wife about the guaranty. The "bank's statement" was a Seattle–First National Bank memorandum regarding Robert Starry's guaranty of the Seattle–First loan to Hilltop. There the Seattle–First loan officer noted, "I talked with Bob [Robert Starry] about this advance, and he feels that it is his duty as a father to try and help Mark [Starry] get started on something productive." This statement was corroborated by Robert Starry, who also testified that he did not expect to benefit economically from his loan guaranties. In considering this evidence, all adduced by the Starrys, the court showed that it had correctly looked to the Starrys to overcome the presumption of community liability. A presumption is not evidence; its purpose is only to establish which party has the burden of first producing evidence on a matter in issue. *Amend v. Bell,* 89 Wn.2d 124, 570 P.2d 138 (1977); *Bradley v. S.L. Savidge, Inc.,* 13 Wn.2d 28, 123 P.2d 780 (1942). Once the Starrys had presented evidence to overcome the presumption of community liability, the presumption had served its function. *See Amend v. Bell, supra.* The trial court was then required to disregard the presumption, evaluate the evidence presented by both sides, and reach its conclusion. Our review of the record shows the court did just that.

 The appellant argues, however, that the evidence does not support the court's findings of fact and its conclusion that the Starrys did not incur community liability. We

---

[3]Q. [from the Starrys' counsel] Did you ever understand that Bob Starry had any personal income from the Hilltop Shakemill?

A. [from Lusby] Father–son relationship is the only thing.

Q. He was just trying to help Mark?

A. (Nods head.)

Q. You didn't think he was a part owner of Hilltop?

A. No. Only thing Hilltop was buying some of their blocks from Bob, Bob's business occasionally.

disagree. Our review is limited to ascertaining whether substantial evidence supports the court's findings of fact and, if so, whether the findings support the conclusions of law and the judgment. *Enterprise Timber, Inc. v. Washington Title Ins. Co.*, 76 Wn.2d 479, 457 P.2d 600 (1969). The bank argues that the community of Robert and Elaine Starry received a material economic benefit from the guaranty to Bank of Washington because Bank of Washington's loan to Hilltop enabled Hilltop to repay its loan from Seattle–First National Bank, also guaranteed by Robert Starry. This argument overlooks the separate nature of Robert Starry's guaranty to Seattle–First. The trial court found that Robert Starry executed the guaranty to Seattle–First without informing his wife. The Seattle–First memorandum and Starry's own testimony showed that Starry executed the guaranty to help his son without expecting to benefit economically. Therefore, by guaranteeing the Seattle–First loan, Robert Starry incurred separate liability only. *See Warren v. Washington Trust Bank, supra.* Hilltop's repayment of the Seattle–First loan, then, relieved Robert Starry of his responsibility for the loan but did not benefit the Starry community. Appellant argues that Seattle–First may have brought suit against the Starry community to enforce the guaranty and that, therefore, repayment of the loan saved the Starry community litigation expenses. We cannot presume, however, that Seattle–First would have brought a wrongful suit against the Starry community. Nor was evidence presented that Robert Starry executed the Bank of Washington guaranty expecting to avert such a suit. In any case, attorney fees incurred in defending a suit on a separate obligation of one of the spouses are a responsibility of that spouse and not of the marital community. *See Vanderveer v. Hillman,* 122 Wash. 684, 211 P. 722 (1923).

Bank of Washington next argues that Robert Starry expected to incur a material economic benefit from the Bank of Washington guaranty because his company, Alpine Excavating, did business with Hilltop Shake. Substantial evidence, however, supports the trial court's findings that

such business was "casual and inconsequential" and that Starry was motivated by paternalistic rather than economic considerations in guaranteeing the loan to his son. This case contrasts sharply with *Warren v. Washington Trust Bank, supra.* There the court found community liability for the suretyship obligation of a husband on behalf of his son–in–law upon evidence of significant financial involvement between the two marital communities over a period of some 20 years. Rather, the instant case is akin to *Sun Life Assurance Co. of Canada v. Outler, supra.* There the court found that a husband's endorsement of a son–in–law's note created separate liability only, the community successfully having rebutted the presumption of community liability by a showing that the husband was motivated by "the promptings of a generous paternal impulse" rather than by expectations of economic benefit to the community. *Sun Life,* at 548. We hold that substantial evidence supports the court's findings of fact and that the findings support the court's conclusions of law that the Starrys did not expect to benefit economically from the guaranty and, thus, did not incur community liability.

Bank of Washington argues finally that the Starrys should be estopped from denying community liability. The bank did not raise the issue at trial, and we will not consider it on appeal. *See Fuqua v. Fuqua,* 88 Wn.2d 100, 558 P.2d 801 (1977). We wish to make some observations, however, about what appears to be at the heart of this issue: the bank's belief that the Starry community should be held liable for Hilltop's obligations because of Robert Starry's promises of community liability. The bank's feeling of betrayal by Robert Starry, evidently a respected businessman in his community, is understandable. Because Starry at present has no separate property, he may escape liability altogether for Hilltop's obligations. *See Stockand v. Bartlett,* 4 Wash. 730, 31 P. 24 (1892); *Aichlmayr v. Lynch,* 6 Wn. App. 434, 493 P.2d 1026 (1972). The bank, however, should know the State's community property laws as they relate to banking. The bank knew that Robert Starry did

not execute the guaranty for business reasons, yet relied on Starry's assurances of community liability without requiring his wife to sign the guaranty. For the protection of community assets, the law requires both spouses to join in the gratuitous lending of community credit. *Sun Life Assurance Co. of Canada v. Outler, supra.*[4] Otherwise, through the actions of one spouse acting independently, "the community estate may be depleted by transactions in which it can have no possible chance to benefit." *Sun Life Assurance Co. of Canada v. Outler, supra* at 548.

The judgment is affirmed.

CALLOW, C.J., and ANDERSEN, J., concur.

Reconsideration denied August 28, 1980.

Review denied by Supreme Court November 21, 1980.

---

[4]"In effect community credit is treated like any other asset which cannot be given unless both spouses concur." Cross, *The Community Property Law in Washington,* 49 Wash. L. Rev. 729, 822 n.473 (1974). *See* RCW 26.16.030(2).