12

[No. 12492–1–II.   Division Two.   August 20, 1990.]

THE STATE OF WASHINGTON, *Respondent,* v. BRIAN
HODGSON, *Petitioner.*

*Dennis D. Reynolds* and *Williams, Kastner & Gibbs,* for petitioner.

*Patrick D. Sutherland, Prosecuting Attorney,* and *George A. Steele, Deputy,* for respondent.

*Kenneth O. Eikenberry, Attorney General,* and *Fronda Woods, Betty A. Edwards,* and *Jay D. Geck, Assistants,* amici curiae for respondent.

PETRICH, A.C.J.—This case concerns whether geoduck clams qualify as private sector cultured aquatic products pursuant to RCW 15.85.020(3), for purposes of the exemption from the duty to submit fish receiving tickets contained in WAC 220–69–240(3)(d). Defendant, Brian Hodgson, as owner of Rawhide, Inc., was cited for failure to submit "fish receiving tickets" for geoduck clams harvested by Rawhide on state–owned subtidal tracts on which Rawhide had purchased the right to harvest such clams, in violation of WAC 220–69–240(7).[1]

The District Court dismissed the criminal complaint concluding that Rawhide was exempt, pursuant to WAC 220–69–240(3)(d), from the duty to submit fish receiving tickets. The Superior Court reversed. We granted discretionary review pursuant to RAP 2.3(d)(3) and affirm the Superior Court's order of reversal.

Pursuant to RCW 75.08.080, the Legislature has delegated to the Department of Fisheries the authority to regulate the taking, possession, disposal, landing and sale of food fish or shellfish. This authority includes the authority

---

[1] WAC 220–69–240(7) provides, in pertinent part:

"(7) It is unlawful for any person receiving or purchasing geoducks from fishermen, firms, or individuals, regardless of whether or not the purchaser or receiver holds a license as required under Title 75 RCW, to fail to accurately and legibly complete the fish receiving ticket initiated on the harvest tract immediately upon the actual landing of geoducks from the harvesting vessel onto the shore. . . ."

to require statistical and biological reports from fishermen, dealers, boathouses or processors of food fish or shellfish and to make other rules necessary to carry out RCW Title 75. *See* RCW 75.08.080(1)(g), (j).

In accordance with that authority, the State Department of Fisheries promulgated WAC 220-69-240(1), which states, in pertinent part:

> Every person originally receiving or purchasing . . . shellfish . . . must immediately, completely, accurately, and legibly prepare the appropriate state of Washington fish receiving ticket regarding each and every purchase or receipt of such commodities.

Fish receiving tickets are required for fresh food fish and shellfish landed in the state of Washington. WAC 220-69-240(2)(a). Such products are exempted from the requirement, however, where they qualify as "private sector cultured aquatic products." WAC 220-69-240(3)(d). The term "private sector cultured aquatic products" is defined in RCW 15.85.020(3) as:

> native, nonnative, or hybrids of marine or freshwater plants and animals that are propagated, farmed, or cultivated on aquatic farms under the supervision and management of a private sector aquatic farmer or that are naturally set on aquatic farms which at the time of setting are under the active supervision and management of a private sector aquatic farmer. . . .

An "aquatic farmer," for purposes of the above statute, is defined as:

> a private sector person who commercially farms and manages the cultivating of private sector cultured aquatic products on the person's own land or on land in which the person has a present right of possession.

RCW 15.85.020(2).

Applying the above provisions, the District Court found that: (1) Rawhide acquired a "possessory right" in the state–owned subtidal tracts by virtue of its purchase of the right to harvest the clams thereon; (2) the Department of Fisheries had previously recognized such interests as qualifying an applicant as an aquatic farmer; (3) geoduck clams are native marine resources that naturally occur in the

waters of Puget Sound; and (4) the Department of Fisheries had previously recognized geoduck clams as a species qualifying as an aquatic farm product. Based on these findings, the District Court concluded that Rawhide qualified as an aquatic farmer and that the geoducks harvested by it qualified as private sector cultured aquatic products and were exempt from the duty to submit fish receiving tickets.

In reversing the decision of the District Court, the Superior Court limited itself to the issue of Rawhide's status as an aquatic farmer. The Superior Court concluded that Rawhide's purchase of the right to harvest the clams on the state–owned subtidal tract did not give rise to any "possessory" interest in the tract and, therefore, did not qualify Rawhide as an aquatic farmer within the meaning of RCW 15.85.020(2). Accordingly, the Superior Court deemed the clams harvested by Rawhide as incapable of attaining the status of private sector cultured aquatic products for purposes of RCW 15.85.020(3) insofar as Rawhide itself did not qualify as an aquatic farmer.

We begin our review by noting that appellate review of a superior court decision reviewing a decision of a district court is governed by the RALJ standards contained in RALJ 9.1. *State v. Ford*, 110 Wn.2d 827, 829, 755 P.2d 806 (1988). Pursuant to RALJ 9.1(a), an appellate court shall review the decision of a district court to determine whether that court has committed any errors of law. RALJ 9.1(a). With regard to factual determinations, a reviewing court:

shall accept those factual determinations [of the district court] supported by substantial evidence in the record (1) which were expressly made by the court of limited jurisdiction, or (2) that may reasonably be inferred from the judgment of the court of limited jurisdiction.

RALJ 9.1(b).

Notwithstanding the Superior Court's conclusion that Rawhide did not acquire a possessory interest in the land for purposes of its status as an aquatic farmer, an issue which we do not address, we conclude that the District

Court erred, as a matter of law, in concluding that the geoducks harvested by Rawhide qualify as private sector cultured aquatic products pursuant to RCW 15.85.020(3), and reverse its order of dismissal.

At the outset, we reject Hodgson's contention that a license issued Rawhide by the Department of Fisheries prior to the issuance of the citation in question, registering Rawhide as an aquatic farmer precludes any criminal prosecution for a violation of WAC 220–69–240(7).[2] As noted by the District Court in rejecting this contention below, the fact that one possesses a valid registration as an aquatic farmer does not determine whether conduct engaged in pursuant to such registration is exempt from the duty to submit fish receiving tickets.[3]

■■ This is so because an administrative agency may not amend or alter the statutes under which it functions by its own interpretation of those statutes. *In re Myers*, 105 Wn.2d 257, 263–64, 714 P.2d 303 (1986). Accordingly, even if the Department of Fisheries were estopped by virtue of the issuance of the license to assert that the geoduck clams harvested by Rawhide were not private sector cultured

---

[2]Registration of aquatic farmers is required by statute pursuant to RCW 75.58.040, which provides, in pertinent part: "All aquatic farmers as defined in RCW 15.85.020 shall register with the department of fisheries . . . ." Pursuant to WAC 220–76–010(1), it is unlawful for any person to cultivate private sector cultured aquatic products as defined under RCW 15.85.020(3) without the aquatic farmer having first registered the aquatic farm with the Department of Fisheries.

The Department of Fisheries granted Rawhide registration as an aquatic farmer and issued Rawhide a plastic license card evidencing registration based upon an application submitted by Rawhide, pursuant to WAC 220–76–020(4), (6) and (7), which specified the location of the property, the fact that ownership of the property resided in the Department of Natural Resources, and that the species to be cultivated was geoduck clams.

[3]In contrast, Rawhide clearly could not be held criminally liable for conduct engaged in pursuant to an erroneously issued permit or registration purporting to authorize the conduct which is subsequently alleged to be unauthorized. *See State v. Berg*, 4 Wn. App. 882, 885–86, 486 P.2d 112 (1971) (holding that inaction on the part of the Department of Motor Vehicles in revoking an individual's license as a motor vehicle wrecker did not convert the individual's lawful operation into a criminal operation during such period of inaction).

aquatic products, such license cannot confer upon Rawhide a status greater than what the statute itself permits. We conclude, therefore, that the license is of no effect in determining whether the geoduck clams harvested by Rawhide actually qualified as private sector cultured aquatic products for purposes of RCW 15.85.020(3), and were exempt from the fish receiving ticket requirement under WAC 220–69–240.[4]

Turning to the statute at issue, the definition of private sector cultured aquatic products contained in RCW 15.85-.020(3) can be broken down into two separate definitions. The first consists of those marine or freshwater plants or animals that are "propagated, farmed or cultivated on aquatic farms" under the supervision and management of a private sector aquatic farmer; the second consists of those marine or freshwater plants or animals that are "naturally set on aquatic farms which at the time of setting" are under the active supervision and management of a private sector aquatic farmer.

Hodgson's argument in support of the classification of geoduck clams as private sector cultured aquatic products is limited to the first class specified above pertaining to those plants or animals that are propagated, farmed or cultivated on aquatic farms. Such an argument, however, ignores the uncontested fact that geoduck clams are naturally setting animals.[5] As such, we believe their status as

---

[4]For this reason, we similarly find it unnecessary to address Hodgson's contention that the Superior Court erred in concluding that certain actions taken by the assistant director of the Shellfish Division on behalf of the Department of Fisheries, prior to the issuance of the citation at issue, revoked Rawhide's registration prior to the alleged offense and, thus, precluded any reliance by Rawhide on such registration as barring prosecution for failure to submit fish receiving tickets.

[5]At the request of amici, Washington State Departments of Natural Resources, Fisheries and Agriculture, and based upon excerpts from *Invertebrate and Marine Plant Fishery Resources of British Columbia,* by Canadian Department of Fisheries and Oceans (1986), this court takes judicial notice, pursuant to ER 201(b), that geoduck clams originate as fertilized eggs which develop into larvae and drift as plankton for approximately 7 weeks at which time they settle to

private sector cultured aquatic products is governed solely by the later portion of RCW 15.85.020(3). The Legislature, in defining private sector cultured aquatic products, has expressly distinguished between those plants and animals which are "propagated, farmed or cultivated," and those that are naturally setting. "[W]here the Legislature uses certain statutory language in one instance, and different language in another, there is a difference in legislative intent." *UPS, Inc. v. Department of Rev.*, 102 Wn.2d 355, 362, 687 P.2d 186 (1984). We conclude, therefore, that the separate treatment given naturally setting plants and animals by the statute clearly imports a legislative intent that such plants and animals be distinguished from those which are capable of being propagated, farmed or cultivated.

Furthermore, were we to construe naturally setting plants and animals as capable of being "propagated, farmed or cultivated" for purposes of qualifying such plants and animals as private sector cultured aquatic products, we would render meaningless that portion of RCW 15.85-.020(3) requiring that such plants and animals be under the active supervision and management of an aquatic farmer at the time of setting in order to qualify as such. Such a construction is to be avoided. *See UPS, Inc. v. Department of Rev.*, 102 Wn.2d at 361–62.

Accordingly, we construe RCW 15.85.020(3) as limiting the qualification of naturally setting plants and animals as private sector cultured aquatic products to those which are under the active supervision and management of a private sector aquatic farmer at the time of setting. In the instant case, Hodgson concedes that Rawhide did not acquire any interest in the land in question until approximately 3 months prior to the harvesting of the clams. Based on our knowledge that geoduck clams permanently settle at

---

the bottom, change form, and assume a burrowing existence. Although for some months after the first settlement geoducks are capable of leaving a particular habitat and settling again, they lose this ability as they grow older. Geoducks do not reach a harvestable age until they are approximately 5 years old.

a young age and that such clams do not reach a harvestable age until they are approximately 5 years old, we find the facts to be such that reasonable minds could reach but one conclusion that Rawhide was not, as a matter of law, actively supervising and managing the land in question at the time the geoduck clams settled. *See Hartley v. State,* 103 Wn.2d 768, 775, 698 P.2d 77 (1985). Consequently, we find the trial court to have erred, as a matter of law, in concluding that the geoduck clams harvested by Rawhide qualified as private sector cultured aquatic products for purposes of the exemption from the duty to submit fish receiving tickets contained in WAC 220-69-240(3)(d).

The Superior Court's order remanding for prosecution is affirmed.

WORSWICK, J., and PETRIE, J. Pro Tem., concur.