[No. 15479-3-III.   Division Three.   July 29, 1997.]

SUNKIDD VENTURE, INC., *Petitioner*, v. SHANNON
SNYDER-ENTEL, *Respondent*.

*Mark E. Lehinger,* for petitioner.

*John Montgomery* and *Montgomery & Carroll,* for respondent.

SCHULTHEIS, A.C.J. — We are asked to decide whether a wife is separately bound as a tenant to a lease agreement signed only by her husband. The Spokane County Superior Court affirmed a district court decision to dismiss Sunkidd Venture, Inc.'s[1] complaint against Shannon Snyder-Entel for damages due to breach of a lease agreement. We granted discretionary review. Sunkidd contends the district court erred as a matter of law in holding that the lease was not a community obligation and that Ms. Snyder-Entel was not separately liable for breach. We reverse and remand.

---

[1]Sunkidd, a collection agency d/b/a American Bonded Collections d/b/a Checkmaster, is the assignee of the landlord, Wieber Pacific Management, Inc.

In March 1988, William Entel entered into a lease for a term that expired in August 1988. The landlord was Becker Pacific Management Agency, Inc., which later became Wieber Pacific Management, Inc. A provision in the lease states that the rental is to be occupied only "by Tenants with the ability to contract whose signatures are affixed hereto, consisting of one adult and no children . . . ." Occupancy by any other people was declared a breach of the agreement.

After Mr. Entel married Ms. Snyder-Entel in June 1988, the couple lived together in the apartment. Beginning in early August 1988, Wieber sent three notices to the apartment, addressed to Mr. Entel, informing him he had three days to quit the premises or pay rent. The third notice included a form that allowed Mr. Entel to check a box and extend the lease for a year, "with all other terms and conditions remaining the same." Mr. Entel signed the lease extension and sent it to Wieber. His wife did not sign, but she later testified she remembered receiving the third notice and understanding that the landlord intended to terminate the tenancy at the end of the month. She also testified her husband told her he had extended the lease and she assumed they would live there another year.

During their tenancy, Ms. Snyder-Entel usually wrote the rent checks from a joint account and occasionally complained to Wieber about maintenance problems. The couple continued to live in the apartment until October 1988, when Ms. Snyder-Entel sent notice that they intended to vacate by the end of the month.[2] Wieber sent Mr. Entel a "Tenant Deposit Closing Statement" in November charging him $3,770 for cleaning, rent through the term of the lease, average utilities for that period and advertising for new tenants. Ms. Snyder-Entel responded, denying liability for those expenses and contending Wieber broke the lease because it did not fix the mainte-

---

[2]According to Ms. Snyder-Entel's trial testimony, the couple decided to move out of state before the end of their lease because Mr. Entel was trying to "escape on some other court problems" involving an ex-wife or ex-girlfriend.

nance problems. Sometime in 1988 or 1989, Wieber assigned the debt to Sunkidd/American Bonded for collection.

In May 1991, Sunkidd filed a complaint in district court against Ms. Snyder-Entel as "individually liable" for the accounts due on the lease abandonment.[3] This amount had been reduced to $1,444, because Wieber had been able to rent the apartment within two months. The Entels separated in September 1992 and divorced in April 1993. In June 1994, Ms. Snyder-Entel answered the complaint, denying any contractual relationship with Wieber or any duty to pay an obligation of her former spouse. She also claimed a right to set off any obligation due to Wieber's violation of the Landlord-Tenant Act and a right to treble damages for violations of the Consumer Protection Act. Her offer to settle pursuant to RCW 4.84.270[4] for $500 was declined.

The case was tried to the district court in March 1995. No findings and conclusions were filed, but the oral decision indicates the judge pro tem. found that the lease extension was not Ms. Snyder-Entel's separate obligation because she did not sign it and had no notice of it before its execution.[5] Although the judge recognized that in some cases debts for "family expenses" may be recovered from a spouse's separate property, he held that such expenses were limited to urgent, immediate needs, like medical expenses. He also held that equitable principles of fundamental fairness obliged him to deny the claim while allowing Sunkidd to refile against Mr. Entel, the signatory on the lease.

On appeal, the superior court affirmed and granted Ms.

---

[3]The record does not disclose why Sunkidd filed only against Ms. Snyder-Entel. The couple was not separated in 1991.

[4]The statute provides that the defendant in an action for $10,000 or less is entitled to attorney fees pursuant to RCW 4.84.250 if the plaintiff recovers nothing or less than the amount offered in settlement pursuant to RCW 4.84.280. RCW 4.84.270.

[5]The court did note, however, that Ms. Snyder-Entel did not repudiate the lease extension after notice.

Snyder-Entel attorney fees because of her prior offer of settlement. RCW 4.84.290. The commissioner of this court granted discretionary review pursuant to RAP 2.3(d)(3) because the issues raised by Sunkidd are of public interest.

The primary issue on appeal is whether Ms. Snyder-Entel is separately bound by the lease extension agreement signed only by her husband. Sunkidd contends the lease extension, signed while the married couple was living in the apartment, was a community obligation. Sunkidd also asserts Ms. Snyder-Entel is separately liable on the lease, first because she participated in the transaction by acquiescing in it, and second because the lease was an expense of the family pursuant to RCW 26.16.205.

■ We review the decision of a district court to determine whether it committed errors of law. RALJ 9.1(a); *State v. Brokman*, 84 Wn. App. 848, 850, 930 P.2d 354 (1997); *State v. Hodgson*, 60 Wn. App. 12, 15, 802 P.2d 129 (1990). The district court's factual determinations will be accepted if they are supported by substantial evidence in the record. RALJ 9.1(b); *Hodgson*, 60 Wn. App. at 15.

■ We begin with the general presumption that a debt incurred by either spouse during marriage is a community debt. *Oil Heat Co. of Port Angeles, Inc. v. Sweeney*, 26 Wn. App. 351, 353, 613 P.2d 169 (1980). This presumption may be rebutted by clear and convincing evidence that the debt was not contracted for community benefit. *Sun Life Assurance Co. v. Outler*, 172 Wash. 540, 544, 20 P.2d 1110 (1933); *Oil Heat*, 26 Wn. App. at 353; *Bank of Wash. v. Hilltop Shakemill, Inc.*, 26 Wn. App. 943, 614 P.2d 1319, *review denied*, 94 Wn.2d 1024 (1980). The key test is whether, at the time the obligation was entered into, there was a reasonable expectation the community would receive a material benefit from it. *Potlatch No. 1 Fed. Credit Union v. Kennedy*, 76 Wn.2d 806, 808, 459 P.2d 32 (1969); *Sun Life*, 172 Wash. at 544. Actual benefit to the community is not required as long as there was an expectation of community benefit. *Oil Heat*, 26 Wn. App. at 355.

■■ At the time Mr. Entel signed the lease extension, he was undeniably entering into the agreement for the benefit of the marital community. We must presume he reasonably expected that he and his wife would live together in the apartment. As a result, he created a community debt. Usually, when a spouse's act creates a community liability, it is enforceable only against the community property and the acting spouse's separate property. *National Bank of Commerce v. Green*, 1 Wn. App. 713, 717-19, 463 P.2d 187 (1969); 19 KENNETH W. WEBER, WASHINGTON PRACTICE, FAMILY AND COMMUNITY PROPERTY LAW § 14.3, at 259 (1997); Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 WASH. L. REV. 13, 122 (1986). If the obligation is for a family expense, however, it can be enforced against the separate property of one spouse even though the other spouse alone incurred the liability. RCW 26.16.205;[6] *Roller v. Blodgett*, 74 Wn.2d 878, 880, 447 P.2d 601 (1968); *Roberts v. Warness*, 165 Wash. 266, 269, 5 P.2d 495 (1931).

Family expenses pursuant to RCW 26.16.205 are synonymous with a family's "necessaries," those items required for the sustenance, support and ordinary requirements of a family. *Smith v. Dalton*, 58 Wn. App. 876, 885, 795 P.2d 706 (1990); *Bush & Lane Piano Co. v. Woodard*, 103 Wash. 612, 616, 175 P. 329 (1918). Rental of the family residence is a recognized family expense that subjects the spouses to both community and separate liability. *Roller*, 74 Wn.2d at 880; *Strom v. Toklas*, 78 Wash. 223, 229, 138 P. 880 (1914).

■■ At the time, Mr. Entel's agreement to a one-year extension was necessary to ensure housing for the community. Accordingly, the lease obligation was incurred as a family expense. *In re Estate of Trierweiler*, 5 Wn. App. 17, 23, 486 P.2d 314, *review denied*, 79 Wn.2d 1007 (1971). The district court erred as a matter of law in concluding

---

[6]"The expenses of the family and the education of the children, including stepchildren, are chargeable upon the property of both husband and wife, or either of them, and they may be sued jointly or separately." RCW 26.16.205.

otherwise.[7] Although the marital community has been dissolved, the liabilities of its members continue and Sunkidd may proceed against the former spouses either individually or collectively. *Northern Commercial Co. v. E.J. Hermann Co.*, 22 Wn. App. 963, 970, 593 P.2d 1332 (1979). We note, however, that because the obligation is joint and several, Ms. Snyder-Entel is entitled to a contribution from her husband if the lease is determined to be valid. *Trierweiler*, 5 Wn. App. at 23.

Sunkidd requests attorney fees at trial and on appeal. Ms. Snyder-Entel also requests attorney fees on appeal. RCW 59.18.310(2)(b) provides that a landlord may recover reasonable attorney fees from a defaulting tenant. The lease terms accepted by Mr. Entel (and the marital community) include a provision for attorney fees incurred in any action arising from default or breach by the tenant. Pursuant to that contract provision, either party, if prevailing, would be entitled to attorney fees. RCW 4.84.330; *Sardam v. Morford*, 51 Wn. App. 908, 910, 756 P.2d 174 (1988). If Sunkidd prevails on remand, it is entitled to fees incurred at trial and on appeal, provided it submits a timely affidavit of fees. RAP 18.1; *Max L. Wells Trust v. Grand Cent. Sauna & Hot Tub Co.*, 62 Wn. App. 593, 607, 815 P.2d 284 (1991); *Lindgren v. Lindgren*, 58 Wn. App. 588, 599, 794 P.2d 526 (1990), *review denied*, 116 Wn.2d 1009 (1991). By the same token, Ms. Snyder-Entel will be entitled to fees on remand and on appeal if she prevails.

Reversed and remanded to the district court.

KURTZ, J., concurs.

THOMPSON, J. (concurring in part, dissenting in part) —

---

[7]The district court also misapplied the statute of limitations found in Washington's "marital bankruptcy" statute, RCW 26.16.200. This statute provides that any separately incurred antenuptial debt must be reduced to judgment within three years of the marriage of the parties. The lease extension here was signed after the parties were married and does not come under the classification of an antenuptial debt.

The alleged lease liability in this case clearly is a community debt. The general rule is that upon dissolution of the marriage, the former spouses are individually liable for the former community's debt, but only as to "property held by either spouse which was formerly the couple's community property and which is otherwise subject to execution." *Baffin Land Corp. v. Monticello Motor Inn, Inc.*, 70 Wn.2d 893, 906, 425 P.2d 623 (1967); *see Northern Commercial Co. v. E.J. Hermann Co.*, 22 Wn. App. 963, 970, 593 P.2d 1332 (1979); *see generally* Harry M. Cross, *The Community Property Law in Washington (Revised 1985)*, 61 WASH. L. REV. 13, 144-45 (1986); WASHINGTON STATE BAR ASS'N, WASHINGTON COMMUNITY PROPERTY DESKBOOK § 6.20, at 6-12 (George T. Shields et al. eds., 2d ed. 1989). However, a creditor's recovery in this circumstance "is limited to the net community equity at the time of dissolution of the marriage." Cross, *supra*, at 145; *see Watters v. Doud*, 95 Wn.2d 835, 838-41, 631 P.2d 369 (1981).

In this case, since the community has been dissolved, the creditor sought to hold Ms. Snyder-Entel liable *individually*. The creditor hopes to satisfy the judgment against Ms. Snyder-Entel's individual property that was not a part of the former community's net equity at the time of the dissolution, such as her current earnings.

As noted in the majority opinion, a former spouse may be liable individually under RCW 26.16.205, the family expense doctrine. Under this statute, a community debt for a family expense may be enforced against the separate property of either spouse, even if that spouse did not individually incur the debt. Rent of the family's residence is a family expense. *Roller v. Blodgett*, 74 Wn.2d 878, 880, 447 P.2d 601 (1968); *Strom v. Toklas*, 78 Wash. 223, 229-30, 138 P. 880 (1914).

In both of the cases relied on by the majority, the lease liability was for dwellings in which the family actually resided. *Roller*, 74 Wn.2d at 880; *Strom*, 78 Wash. at 229-30. No cases in Washington have addressed the issue presented in this case: expenses for a dwelling after the family has moved.

Lease liability in these circumstances should not be a family expense. After moving from the apartment the Entel family certainly resided elsewhere; thus, under the majority opinion, the costs of maintaining *two* dwellings would be family expenses under RCW 26.16.205, even though the family did not actually reside in one of the dwellings during the period at issue. Rental expense for a dwelling in which the family did not reside should not be a family expense.

Here the alleged liability is purely contractual, based on an agreement Ms. Snyder-Entel did not sign. As the creditor points out, both spouses are competent to manage and control the community's property. RCW 26.16.030. Therefore, the community is liable for the contractual debts incurred by either spouse on behalf of the community. *See Huling v. Vaux*, 18 Wn. App. 222, 225-26, 566 P.2d 1271 (1977). However, the liability in this circumstance is to the *community*, not to the individual spouse. Under *Watters*, the creditor's judgment should be limited to the former community's net equity at the time of the dissolution. *Watters v. Doud*, 95 Wn.2d 835, 841, 631 P.2d 369 (1981).

I agree the case must be remanded, but I would not permit the creditor to obtain a judgment against Ms. Snyder-Entel's current assets that were not part of the former community's net equity at the time of the dissolution.

Review denied at 134 Wn.2d 1007 (1998).